A94A2833, A94A2834. FARMER v. THE STATE (two cases).
(455 SE2d 297)

BIRDSONG, Presiding Judge.

This is a discretionary appeal from a probation revocation and denial of supersedeas bond. In 1987, Tanya D. Farmer was indicted for three counts of writing bad checks for which she was given present consideration by First Federal Savings & Loan. At the sentencing hearing in 1988, it appeared Farmer had paid two checks but a check for $875 remained unpaid. The court gave Farmer first offender status with two years probation, directed the probation officer to find out from the bank what amount had not been paid, and orally ordered Farmer to "pay it back".

The sentencing transcript shows the judge did not order Farmer to report to a probation officer or do anything other than "pay restitution . . . pay it back." The sentence form contains blocks next to certain conditions but none of the blocks is checked. Neither the court nor the sentence form specified to whom Farmer was to "pay it back."

A warrant issued in January 1989 alleged Farmer "fail[ed] to report and pay as directed. Mov[ed without] notifying probation officer." The warrant was not served. In 1994, Farmer became involved in a dispute in a multi-million dollar estate and the trustee had her arrested on a civil warrant for failing to sit for a deposition. The 1989 warrant surfaced and these proceedings ensued. Farmer has thus been in jail since May 1994.

At the first revocation hearing, the proceedings were not recorded. The probation officer evidently had not verified whether Farmer had paid full restitution, and the proceedings were continued. At the continued hearing on May 26, 1994, there was no transcript of the 1988 sentencing. The case was prosecuted by probation officer Anne Day rather than by a State's attorney. Officer Day stated in the record that the 1988 sentencing court ordered Day "to check with the bank and verify the exact amount of restitution." However, the only evidence Day produced to show that Farmer had failed to pay restitution was a letter dated the day of sentencing (February 12, 1988) from First Federal stating that the $875 check was unpaid. Farmer's counsel said Farmer had paid the $875 in 1988; he sought a continuance to get such evidence and to get a transcript of the 1988 sentencing. He also stated that Day had told him the boxes on the form do not have to be checked and the form does not have to state whether a defendant must report.

A third revocation hearing was held June 23, 1994. Day announced that the previous week a bond hearing was held, that Farmer was not present at that bond hearing and was not represented by an attorney as it was not a scheduled hearing, and that bond was denied. Day stated that at the last revocation hearing "it was further noticed to obtain a copy of a letter from Bank South stating that [Farmer] had paid the [$875]" and that "Your Honor had directed me, before you left town for your conference, to *contact the bank* to verify any information," (emphasis supplied) but she had not done so.

Day offered no evidence at the June 23, 1994 hearing that she contacted the bank to verify whether the $875 had been paid. Again she produced only the February 12, 1988 letter from the bank saying the $875 had not been paid as of February 12, 1988, and again she produced no evidence to contradict Farmer's testimony that the $875 was paid to the bank in 1988. Officer Day stated that her notes showed she told Farmer on February 12, 1988 that she would have to pay $75 per month restitution, apparently to the probation office. Farmer's counsel produced a notarized letter from Bank South dated June 7, 1994, confirming "that when the account of Tanya Farmer with First Federal [n/k/a Bank South] was closed, there were no outstanding debits or credits." The judge said this letter did not prove *when* the account was closed, and, further, that a warrant had issued in 1989 for failure to pay and nothing indicated the warrant was improper. He then demanded that Farmer prove when the $875 was paid. Farmer testified she paid it in 1988. Farmer's counsel stated he could verify this with the bank in two minutes, but the judge demanded of him: "Why hasn't it been verified before. . . . Instead of having non-lawyers going to the probation department and browbeating the probation department and intimidating the probation depart-

ment and harassing the probation department from what I understand, all that was necessary was that we find out whether restitution [was] made in a timely manner." The judge did not give Farmer's counsel a chance to get that information. The transcript of the 1988 sentencing was produced at this June 23, 1994 revocation hearing. Farmer's counsel repeatedly alerted the judge that neither the sentencing court nor the sentence form required Farmer to do anything except pay restitution. Officer Day stated that her notes showed she had orally explained to Farmer that she had to report and pay $75 per month, beginning March 1988. The judge stated that the boxes on the sentence form do not have to be checked, that the probation department carefully explains probationers' obligations to them, and that "Ms. Day has always done it very well in this court."

The judge then erroneously stated that Farmer "signed [a] sheet which states she has to report either by mail or by phone." Although it was pointed out that Farmer signed no such paper, the judge revoked Farmer's probation and sentenced her to serve two years in jail. On July 1, 1994, Farmer filed a motion for reconsideration with a June 29, 1994 letter from Bank South stating: "Our records indicate that Tanya Farmer's account . . . was closed in 1988. Therefore, any transactions regarding this account must have occurred before this time." The trial court did not rule on the motion for reconsideration.

On August 24, 1994 we granted Farmer's application for appeal and directed that "in light of *Grant v. State*, 195 Ga. App. 463 (2), 464-465 (393 SE2d 737), the appeal . . . shall be expedited, and the case is remanded . . . for expedited consideration of bond." On August 26, 1994, Farmer moved for supersedeas bond, alleging that she is the mother of five children, has no other criminal convictions, has lived mostly in Atlanta since 1987, has a trust fund governed by Fulton County Probate Court in excess of hundreds of thousands of dollars for a handicapped child and is thus very unlikely to flee, and is in fear of losing her handicapped child because of her imprisonment.

On September 1, 1994 the trial court denied supersedeas bond on grounds that Farmer "poses a risk of flight and . . . her appeal is frivolous." Despite appellant's direction in her notice of appeal that all transcripts were to be filed, the court below did not transmit the supersedeas bond hearing transcript until February 17, 1995. In January 1995, Farmer filed in this court a pleading alleging that the juvenile court has sought to take custody of her handicapped child as a result of her continued imprisonment. *Held*:

1. The appeals from the revocation and denial of bond are consolidated; the State's motion to dismiss the appeal from denial of bond (Case No. A94A2834) is denied. OCGA § 5-6-34 (d).

2. The delay in appellate consideration is caused by failure of the

court below to include the order granting discretionary appeal in the revocation appeal record (Case No. A94A2833) and to transmit the supersedeas bond hearing transcript as directed by Farmer in her notice of appeal in A94A2833.

3. Farmer appeals the denial of supersedeas bond. The supersedeas bond hearing commenced: "[TANYA FARMER]: Your Honor, I was just notified of this hearing today last night, and I didn't have a chance to be properly represented. And I would like to make a motion to have this reset to next week to give me time to have my attorney present, because he was out of town today. THE COURT: Well, you filed this [bond application] pro se. There is not an attorney who is representing you on this action, and we have instructions from the Court of Appeals, who has accepted the appeal, to expedite consideration of the bond, and that's why we did it. Your husband, on your behalf, has been calling my office . . . three or four times every day . . . asking for a hearing, and saying when is the hearing going to be held. We tried to schedule this . . . on your behalf so that we could do this quickly and expeditiously, as directed by the Court of Appeals. . . . So I would deny your motion. . . . Do you wish to add anything as far as evidence, or call any witnesses? . . . [FARMER]: Well, I didn't have time to notify them. That's the reason I'm requesting this. I was just notified of this, my husband and I, yesterday evening toward the end of the day, so we haven't had time to do this. THE COURT: Who would you call if you had had [sic] to call them? [FARMER]: I would call my pastor. I would call my daughter's doctors, and some of the teachers of my children. THE COURT: And they would be . . . character witnesses for you? [FARMER]: Yes, they would. . . . THE COURT: Ms. Keel, would you like to present anything on behalf of the State? . . . MS. KEEL: Your Honor, I have one witness on the issue of the potential for the defendant to flee the jurisdiction."

The State produced, as witness, an assistant to attorney Louis Levenson, guardian of the property of Farmer's handicapped child. The witness testified, with hearsay and conclusion, that Farmer committed certain acts found offensive or inconvenient by Levenson; that Levenson's investigator could not locate her in the summer of 1993; that Levenson filed a deprivation petition as to the child whose trust he controls; and that the Fulton Juvenile Court on May 9, 1994 awarded temporary custody of the child to Farmer's husband's mother (who apparently has kept Farmer's other children while Farmer is in jail). (The record and transcripts show attorney Levenson had Farmer imprisoned on or about May 1 or May 3, 1994 on a civil warrant or probate court contempt citation for failing to sit for a deposition; on May 6, 1994 this revocation petition was filed.) Farmer was unsuccessful in her effort to cross-examine the trustee's assistant;

although he had made detailed hearsay allegations about her misdeeds, when Farmer tried to contradict him as to those facts he said he did not know, did not remember, and could not speak for others. Farmer argued that because of her children she would not flee. The State's attorney stated that Farmer was a flight risk and in her appellate experience Farmer's appeal would not be successful and is therefore frivolous. Bond was denied.

(a) The trial court erred in conducting the hearing without giving Farmer adequate notice of it. The trial court abused its discretion in denying Farmer's motion for continuance, particularly under the guise that she had asked for a hearing and that the Court of Appeals had directed that the hearing be expedited. The court must give a supersedeas bond applicant "notice of the hearing and a chance to appear and be heard." *Moore v. State*, 151 Ga. App. 413, 414 (260 SE2d 350). This includes the right to *meaningful* notice and the *meaningful* right to appear and be heard.

(b) The trial court erred in concluding Farmer was at risk to flee based on hearsay and conclusion which Farmer, being denied the right to have her attorney present, was helpless to contradict.

(c) When this court has granted a discretionary appeal under OCGA § 5-6-35, the trial court is without authority to find such appeal to be frivolous. The denial of supersedeas bond on that ground was an abuse of discretion as a matter of law and fact. The denial of bond was a manifest abuse of discretion.

4. The record shows conclusively that another bond hearing was held in June 1994 without notice to Farmer or her attorney, and without her presence. The State now asserts there was no such bond hearing. This is a misrepresentation of fact. The June 23, 1994 transcript shows the probation officer and the judge made these statements for the record: "[T]here was a bond hearing on Friday that was held before Judge Fryer. Bond was denied. THE COURT: . . . This was held in front of Judge Fryer because I was out of town, correct? MS. DAY: That's correct. . . . THE COURT: Who was representing Ms. Farmer? . . . MS. DAY: There was no attorney there. . . . THE COURT: Was [Farmer] brought over? . . . MS. DAY: No, she was not present. It was not a scheduled hearing. I was just notified from Judge Fryer's office to come over there. THE COURT: And he was presiding at the time. MS. DAY: That's correct."

The misrepresentation of these facts by the State and the precipitate conduct of that hearing invite scrutiny.

5. The trial court erred in revoking Farmer's probation.

(a) Service of probation is a privilege; "[t]his does not mean, however, that a defendant's liberty is something that can be the subject matter of whim or fancy of the trial judge." *Cross v. Huff*, 208 Ga. 392, 396 (67 SE2d 124); *Williams v. State*, 162 Ga. 327 (3) (133 SE

843). "[T]o deprive a defendant of his liberty upon the theory that he has violated rules and regulations *prescribed in his sentence,* when no rules, regulations, conditions, limitations, or restrictions were *imposed by such sentence* would deprive the defendant of 'due process of law.' . . . [T]he judge only has authority to revoke the suspension or probation when the defendant has violated any of the rules and regulations *prescribed by the court.*" (Emphasis supplied.) *Cross,* supra at 398; see *Stephens v. State,* 245 Ga. 835, 837 (268 SE2d 330); *Lillard v. State,* 156 Ga. App. 54, 56 (274 SE2d 96). Criminal sentences shall be *certain, definite and free from ambiguity,* and the benefit of any doubt shall be given the accused. *Buice v. Bryan,* 212 Ga. 508 (93 SE2d 676); *Parker v. State,* 188 Ga. App. 738 (374 SE2d 230); *Grant,* supra.

A written sentence controls over the trial court's oral pronouncements (*Curry v. State,* 248 Ga. 183 (4) (281 SE2d 604); *Davis v. State,* 172 Ga. App. 787, 791 (324 SE2d 767)); so, the trial court's oral pronouncements and the written sentence control over a probation officer's notes or instructions. "Where no rules or regulations are *prescribed in the . . . probated sentence,* and no violation of a *prescribed* rule or regulation is alleged, the court is *without authority* to order the defendant incarcerated upon the theory that he has violated the terms and conditions of a probation sentence." (Emphasis supplied.) *Cross,* supra at 392-393; *Morgan v. Foster,* 208 Ga. 630 (2) (68 SE2d 583). See *Huff v. McLarty,* 241 Ga. 442 (246 SE2d 302).

Farmer "did not violate the conditions of [her] probation, since no conditions were imposed" (*Cross,* supra at 397) except payment of restitution. The assertions of the probation officer and judge that the sentence form need not set out conditions of probation and that the probation office advises persons of the conditions of probation amount to an assertion that if the court imposes no conditions or only certain conditions, a probation officer may then impose any condition or may add conditions. That is contrary to the long line of authority cited here and in *Grant,* supra. If the trial court can ignore the written record of sentencing in favor of the probation officer's testimony, any probation is at the whim of a probation officer.

(b) The trial court erred in casting the burden of proof on Farmer. The burden is on the State to prove a violation of probation terms by a preponderance of the evidence. OCGA § 42-8-34.1 (a); *Anderson v. State,* 212 Ga. App. 329 (442 SE2d 268).

(c) The State produced no evidence Farmer did not "pay back" the $875 as prescribed and no evidence contradicting her testimony that she paid it six years ago. Prior to commencing these revocation proceedings, probation officer Day evidently did not verify with the bank whether the $875 had been paid to the bank, and she did not abide by the revoking court's direction to "contact the bank" to verify

the matter. To compound these abuses, on appeal the State implies the victim was not First Federal but was the bank which refused to pay the check (Hinesville Bank), even though the indictment specifically averred that First Federal was the victim bank. The State then artfully asserts that Farmer's "irrelevant" proof that she paid restitution to First Federal "sheds no light" on whether she paid First Federal "to redeem" the bad check. Thus the State now implies there was some other unpaid victim, and that although Farmer paid restitution to First Federal she never "redeemed" the bad check. This misrepresentation of evidence and creation of confusion about which bank was the victim (see State Bar Regulations, EC 7-24 and DR 7-102) is the more serious because the State still cannot point to one iota of evidence that the actual victim was not paid in 1988.

Further, after we granted discretionary appeal, the trial judge ordered *Hinesville Bank* to "inform [that] court if *and when* [the $875] was ever tendered . . . to cover the balance due on this dishonored check." Since Hinesville Bank dishonored the check, however, there was never a "balance due" to Hinesville Bank; it was not the victim. The record omits Hinesville Bank's reply to that order, but shows *First Federal's* 1987 letter notifying Farmer that her $875 check had been dishonored by Hinesville Bank and that she therefore owed $875 *to First Federal.* Evidence that Farmer still owed the $875 on the day of sentencing is obviously not evidence that she never paid it.

No reason appears why the probation office could not have contacted the bank to verify whether Farmer paid restitution to First Federal. The State produced *no* evidence Farmer failed to pay restitution *as prescribed by the court.* The trial judge never required the State to prove it.

The supersedeas bond hearing was improperly and unlawfully held without adequate notice to Farmer and an opportunity to be heard fairly, and the denial of supersedeas bond was based on prejudicial evidence arising out of that unfair hearing and on a finding that Farmer's appeal is frivolous, when our grant of discretionary appeal established as a matter of fact and law that her appeal is not frivolous. Farmer has thus been kept in jail for nearly a year without factual or legal basis and without bona fide controversy. The revocation is reversed, the denial of supersedeas bond is reversed, and Farmer's first offender status is reinstated.

*Judgments reversed with direction. Blackburn and Ruffin, JJ., concur.*

## ON MOTION FOR RECONSIDERATION.

1. In a brief in response to Farmer's motion for supersedeas bond after we reversed the revocation, the State produces evidence which was not before the revoking court. This evidence consists of letters from First Federal in 1987 which, according to the State, prove Farmer had no personal account at the bank and that she wrote the account number of her daughter's trust account on the back of the $875 check. The State's purported purpose is to show "the account of Tanya Farmer" was her daughter's trust account, the status of which does not prove Farmer paid restitution to the bank.

We reversed the revocation because *the State produced no evidence Farmer violated the terms of probation prescribed by the court.* The burden was on the State to prove Farmer did not pay restitution, not on Farmer to prove she paid it. Evidence that Farmer did not pay $75 per month to the probation office is not evidence she failed to pay restitution to the bank. The new issues created by the State on appeal are a smokescreen. There is no evidence in the record as to the details of the bad check transaction, and none from which it can be inferred she did not pay the money back. There is no evidence Bank South's 1994 letters were incorrect in saying that the "account of Tanya Farmer" was closed in 1988 with no debits outstanding; no evidence that "the account of Tanya Farmer" referred to those letters was in fact her child's trust account; no evidence from which it can be inferred that the status of "the account of Tanya Farmer" is "irrelevant" to whether she repaid $875.

This entire controversy is created on appeal out of the State's failure to produce any evidence that Farmer did not pay back the money and the judge's refusal to make the State prove it *while forcing Farmer to try to prove she did pay it.* The State does not bear its burden of proof in a revocation case by forcing a defendant to prove her innocence and then, on appeal, attempting to rebut her evidence with new evidence which was not in the record below. What these tactics prove most clearly is that if there had been any evidence to support the revocation, the State would not have to resort to creating new issues and new evidence on appeal.

The letters now produced by the State to bolster an argument that Farmer had no personal account at First Federal are evidence outside the record. It is an ancient and honored tenet of law that we do not take evidence from the briefs of parties, we do not get evidence from outside the record, and we do not accept assertions of fact or evidence which were not before the trial court. See *Culberson v. Fulton-DeKalb Hosp. Auth.*, 201 Ga. App. 347, 351 (411 SE2d 75). The reasons for this are too obvious to require exposition. The production on appeal by a party of evidence outside the record, or mis-

representation of evidence in the record, is a misrepresentation of fact and a violation of State Bar Rules & Regulations including Standard 45; it subjects the offender to a finding of contempt and it may amount to fraud or other tort in violation of due process rights.

2. On consideration of ethics, we will address some of the State's misrepresentations in its motion for reconsideration but for lack of space we cannot address all.

(a) The State misrepresents the opinion by saying we held that the State produced no evidence Farmer "did not pay the required restitution, as determined by the probation office." In fact, we held the State produced no evidence Farmer did not pay restitution *as prescribed by the court.*

(b) In the same vein, the State insists it produced evidence this court "chose to ignore," viz., the probation officer's testimony that Farmer "did not pay any restitution to the probation office as directed" by the probation officer. We specially addressed the probation officer's testimony that she instructed Farmer as to such terms. We held the written record controls over a probation officer's notes or instructions, and where the court imposes no conditions or only certain conditions a probation officer may not impose or add conditions.

(c) The State misrepresents the record to support a false version of the procedural facts of the case.

The State says we erred in stating that Anne Day announced at the June 23, 1994 revocation hearing that a bond hearing was held at which Farmer was not present and was not represented by counsel. The State's assertion that there was no such bond hearing is addressed in Division 4 of the opinion.

Further, the State says we erred in stating the revoking court " 'directed [Anne Day] . . . to *contact the bank* to verify any information.' " (Emphasis supplied.) The State asserts as fact that "Hildred Shumake (a former State Senator) and [Farmer's] husband were present and were requesting a bond for [Farmer]. They had with them the letter confirming that when the First Federal account was closed there were no outstanding debits or credits. *Since the trial court had instructed Officer Day to attempt to verify any information indicating the bad check had been paid,* Shumake and [Farmer's] husband were to follow Officer Day to the trial court's chambers so she could *make a copy of the letter and verify its contents.* Shumake and [Farmer's] husband never appeared and Officer Day . . . thus could not verify its contents." (Emphasis supplied.)

The evidence of record is this: "[ANNE DAY] Last week there was a bond hearing on Friday that was held before Judge Fryer. Bond was denied. . . . After that discussion with Judge Fryer, they were to follow me to . . . [Your Honor's] office so that we could make a copy of this letter from Bank South, because *Your Honor had directed me,*

*before you left town for your conference, to contact the bank to verify any information. . . .* They were supposed to follow me down to your chambers so I could make a copy of the letter to call this woman to verify it and they never appeared." (Emphasis supplied.) This evidence shows beyond any remote possibility of dispute that the portion of the record pointed to by the State to prove Day was not directed by the revoking judge to "contact the bank" but was merely instructed to "verify any information," e.g., in a letter possessed by Farmer's husband, in fact proves specifically that Day was directed by the revoking judge to *contact the bank.*

The immediate effect of these misrepresentations is to underscore the State's recognition that there is no evidence of record that Farmer failed to pay restitution to the bank.

3. The State contends *Cross v. Huff,* 208 Ga. 392 (67 SE2d 124) refers only to ambiguous sentences, and Farmer's sentence was not ambiguous but was merely "incomplete" so that the probation office simply "completed" it. *Cross v. Huff* speaks to the rule that "conditions of probation" are conditions *prescribed by the court* and when the terms of a sentence are in dispute the "written record" controls over oral pronouncements of the court; so the written record controls over a probation officer's notes or instructions. To say that when a court fails to impose conditions the sentence may be "completed" by the probation office is to arrogate powers to probation officers never dreamed of by the General Assembly or the courts.

The revocation is reversed and the denial of supersedeas bond is reversed. Further, this court hereby grants supersedeas bond to Farmer under Court of Appeals Rule 50 (c) as amended in Rule 40 (b) pending further appeal. The Clerk of the Court of Appeals is directed to issue this opinion and the remittitur together and to deliver the same immediately by hand to the trial court, which shall release Tanya Farmer immediately.

*Motion for reconsideration denied.*

DECIDED FEBRUARY 2, 1995 —
RECONSIDERATION DENIED MARCH 8, 1995.

*Steven J. Strelzik,* for appellant.
Tanya Farmer, *pro se.*
*Lewis R. Slaton, District Attorney, Rebecca A. Keel, Assistant District Attorney,* for appellee.