## A95A1794. TREADWELL v. TREADWELL.
### (463 SE2d 497)

BIRDSONG, Presiding Judge.

James R. Treadwell appeals the jury verdict and judgment against him in the suit of his half-sister, Jamie Treadwell, for breach of fiduciary duty and conversion of funds. Treadwell was the oldest son by a previous marriage of the parties' father, James T. Treadwell. Jamie is the daughter of James T. Treadwell's second wife. At the time of her father's death in 1977, Jamie Treadwell was 11 years old; her mother and father were estranged and Jamie lived with her father. Mr. Treadwell procured a $10,000 life insurance policy and made Jamie the sole beneficiary, designating that if she was not 21 when he died, the proceeds "shall be paid to James Robert Treadwell, son, as trustee for the support of said daughter."

The insurance proceeds were paid by check made out to "JAMES

R. TREADWELL, TRUSTEE FOR THE USE AND BENEFIT OF JAMIE TREADWELL, A MINOR." After her father died, Jamie lived with her mother, at times receiving charity. In 1989 after she reached majority and unsuccessfully appealed to her half-brother James for $500 to buy a car, she retained legal counsel. Her attorney wrote to Treadwell and referred to documents the attorney had previously sent to Treadwell, including a copy of a 1977 letter from the insurance company confirming that payment was made to Treadwell "for the use and benefit of Jamie Treadwell," and including a copy of that cancelled check. The attorney's letter referred to Miss Treadwell's intention "to recover the trust funds that are rightfully hers along with interest on those funds, and any profits which may have been earned therewith."

Within six days Treadwell gave this response by letter: "The apparent confusion is the fact that there were two 10,000 dollar insurance policies on my father. His instructions to me were as follows: 'the proceeds from my life insurance policies, *after* settlement of my debts and obligations' be given to Jamie. However, one of the policies had been cancelled for lack of payment, and the other policy proceeds hardly covered my father's debts. After his death, I discovered that my father had another daughter, by a woman living in Gainesville, Georgia. The other daughter, Tina, was living in near poverty with a small child. I used the remainder of my father's funds plus funds of my own to provide care for his older daughter and grandchild. I am sending you a check for 10,000 dollars to settle any claim that Jamie thinks she has. . . . If this is satisfactory, send me a release form. If this is not satisfactory, return the check. Regards, [Signed] JR Treadwell."

Jamie Treadwell's attorney sent Treadwell a letter by both certified mail and regular U. S. mail, stating that Treadwell's check "satisfies our demand for the trust principal, and unless we hear otherwise within five (5) days, we will presume that no bona fide dispute or controversy exists with respect to this principal amount and [will] deposit the check into our trust account. . . . [T]his payment is not accepted in satisfaction of all of Jamie's claims. . . . Ms. Treadwell is willing to settle for [interest of 13 percent over 12 years]. . . . If this entire amount is paid within ten days she will forego her claims [including for] punitive damages . . . attorneys fees and costs. [Otherwise] our client will take her rightful grievances to the appropriate court."

Receiving no answer, Miss Treadwell's attorney deposited the check after endorsing this statement on the back: "With reservation of all our rights and without prejudice."

When the lawsuit was filed, James R. Treadwell lived in Fulton County, Georgia. At trial he testified he lived in Colorado where he

had put together a real estate development. Although the $10,000 insurance check was made payable to "JAMES R. TREADWELL, TRUSTEE FOR THE USE AND BENEFIT OF JAMIE TREADWELL, A MINOR," he testified he did not see this language when he cashed the check. Under cross-examination, however, he testified he was "aware of the check made payable to [him] as trustee for the benefit of Jamie." He testified he thought he was supposed to use the proceeds from the insurance to pay his father's debts and then "take the balance and put it in a trust for Jamie." He also testified he thought the $10,000 that was to go to Jamie was from an insurance policy that was cancelled and that he had never received any such proceeds. As for the $10,000 he received, after he paid his father's debts there was only $1,500 left, so he gave this to his father's illegitimate daughter Tina, who had seen her father only once, whom Mr. Treadwell did not mention in his will, and whom it took Treadwell five years to find after his father's death. During that time, he did not call his sister Jamie and did not know whether she was living on welfare. He testified he knew Jamie was a very special person to his father and that he should have given the $1,500 to Jamie. When he got the demand letter from Jamie's attorney in 1989, he realized he had made a mistake so he sent $10,000. The reason he did not send interest was that, as he figured, if he had invested Jamie's money in stocks or real estate during those 12 years, he would have lost every dime.

Treadwell's motion for directed verdict on grounds of accord and satisfaction was denied. The jury awarded Jamie Treadwell $13,471 plus $4,500 attorney fees. The trial court denied Treadwell's motion for judgment n.o.v., and he appeals. *Held*:

1. Treadwell contends his tender of $10,000 and Jamie Treadwell's acceptance of it constituted accord and satisfaction under OCGA § 13-4-103 (b), because there was a bona fide dispute as to the amount "if any" of his debt to Miss Treadwell, he tendered an amount less than the amount claimed on the condition of receiving a full release, and she accepted the check on those terms. This assertion is incorrect. Jamie Treadwell did not accept Treadwell's check on his terms. She accepted it only as satisfaction of "our demand for the trust principal, and unless we hear otherwise . . . we will presume that no bona fide dispute or controversy exists *with respect to this principal amount* [but] not . . . in satisfaction of all of Jamie's claims." (Emphasis supplied.)

OCGA § 13-4-103 (b) provides that acceptance by a creditor of a conditional payment less than the amount owed "shall not constitute an accord and satisfaction unless: (1) A bona fide dispute or controversy exists as to the amount due; or (2) Such payment is made pursuant to an independent agreement between the creditor and debtor

that such payment shall satisfy the debt." Under this statute, where there is no bona fide controversy or "independent agreement," the creditor's acceptance of checks with notice of conditions does not as a matter of law constitute an accord and satisfaction. *Franklin v. Cummings*, 181 Ga. App. 755 (353 SE2d 626). OCGA § 13-4-103 (b) is a codification of the holding in *Sylvania Elec. Prods. v. Elec. Wholesalers*, 198 Ga. 870 (1) (33 SE2d 5), that *"In the absence of an independent agreement by a creditor* that the acceptance of an amount less than the indebtedness will be taken, or is taken, in full satisfaction thereof, the mere acceptance of a check for a less sum than the amount of [the debt] . . . with notice that it is in full satisfaction of the debt, will not amount to an accord and satisfaction *unless there existed previously to the tender a bona fide dispute* by the debtor as to the correctness of the amount of the debt." (Emphasis supplied.) This holding was disapproved in *Rivers v. Cole Corp.*, 209 Ga. 406, 408 (73 SE2d 196), but the enactment of OCGA § 13-4-103 (b) obviated the holding in *Rivers* and elevated the holding in *Sylvania Elec. Prods.* to the applicable statutory law with regard to accord and satisfaction. *Sunbelt Life Ins. Co. v. Bank of Alapaha*, 176 Ga. App. 628, 630 (337 SE2d 410).

To constitute accord and satisfaction by payment of less than the amount due under OCGA § 13-4-103 (b) (1), the dispute between the parties must be *bona fide*; the bona fide dispute must be a dispute "between the parties" and not one "confined to the mind of the sender of the check" (*Sunbelt Life Ins. Co.* at 631); and the bona fide dispute between the parties must have existed *previously to the debtor's tender* of an amount less than the sum demanded. Id. Or, accord and satisfaction by acceptance of a sum less than the amount of the debt occurs where there is an "independent agreement" between the parties that such payment shall satisfy the debt. OCGA § 13-4-103 (b) (2); *Sylvania Elec. Prods.*, supra.

(a) There was no bona fide dispute in this case. There is no dispute that the $10,000 check proceeds should have been Miss Treadwell's, according to both the designation of beneficiary on the insurance policy and the payee statement on the insurance check. Treadwell's equivocal testimony (see *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680); *Douglas v. Sumner*, 213 Ga. 82 (3) (97 SE2d 122)) shows he knew when he got the insurance check that it was intended for Jamie; or he should have known it by reading the check when he cashed it, and at the very least he realized, after receiving her attorney's demands, that the $10,000 he received as Trustee for Jamie Treadwell should have gone to Jamie Treadwell. His only dispute is his contention that, *in his mind*, he thought he was doing what his father wanted by paying debts and giving the remainder to his father's illegitimate daughter. Since

Miss Treadwell, via trust to James R. Treadwell, was the recipient designated on the face of the insurance check, this is not a bona fide dispute. Treadwell's only other "dispute" was a question *in his mind* whether he should pay Miss Treadwell interest on the $10,000 during the 12 years he withheld it from her; he concluded he did not owe interest because he did not have any, and because if he had invested the money he would have lost it all. This is not rational, much less a bona fide dispute. Moreover, these "disputes" were only in Treadwell's mind; they did not exist *between the parties*, and they did not exist *previous to Treadwell's tender* of $10,000.

(b) Nor was there an "independent agreement" between debtor and creditor that payment of the lesser sum satisfied the debt. Cases cited by Treadwell for his contention that mere acceptance of the check constituted accord and satisfaction were cases in which the creditor — unlike Jamie Treadwell — did not protest the payment of the smaller sum. *Habachy v. Ga. Health Group*, 207 Ga. App. 288 (427 SE2d 808); *Wood Brothers Constr. Co. v. Simons-Eastern Co.*, 193 Ga. App. 874 (389 SE2d 382); *Chrietzberg v. Kristopher Woods*, 162 Ga. App. 517 (292 SE2d 100). In a nutshell, Treadwell's demand that Jamie Treadwell must either issue a full release or return the $10,000 check was an extortionate demand to which she was not required to accede.

The evidence well supports the verdict. Therefore Treadwell could not have been entitled to directed verdict or judgment n.o.v. under OCGA § 9-11-50.

2. The trial court did not err in refusing to charge the jury that Jamie's acceptance of the money coupled with knowledge that it was tendered in full settlement of the disputed claim amounted to accord and satisfaction, even if the creditor protests.

3. The trial court did not commit reversible error in recharging the jury as to accord and satisfaction 30 minutes after the jury requested a charge on accord and satisfaction.

4. The trial court did not err in refusing on request to send the written charges to the jury. "*Anderson v. State*, 262 Ga. 26, 28 (3) (a) (413 SE2d 732) authorizes but does not mandate that the trial court give a written copy of the charges to the jury." *Brewton v. State*, 216 Ga. App. 346, 350 (454 SE2d 558). That the trial court erroneously told the jury that the law did not allow written charges to be submitted to them did not cause harm.

5. Treadwell contends the trial court erred in refusing to grant him a continuance on the day of trial, November 30, 1992, because his attorney asserted that the regularly sitting trial judge agreed at a previous hearing on November 1 that the trial would not be held until after the new year and after a motion to dismiss had been heard, and because his attorney showed that Treadwell was "snowed in" in

Colorado and did not have notice of the trial. Treadwell's counsel's assertions are without substance and without support in the record. There is a procedure for certification in the record of "what Judge Cummings said on November 1st" (see OCGA § 5-6-41) and Treadwell's counsel has not followed that procedure; therefore we will not accept those assertions. The supplemental record does not contain supporting documents which Treadwell's counsel asserted it would contain. We do not take evidence from outside the record or from the parties' briefs, and we do not adopt facts which are not supported by the record. *Farmer v. State*, 216 Ga. App. 515, 522 (455 SE2d 297). Nothing in the record supports Treadwell's counsel's assertions of fact as to what the regularly-sitting judge said; nothing supports counsel's assertions as to a motion to dismiss. The record shows that the calendar gave notice of trial nearly a month before trial, and Treadwell had ample time to return to Georgia for it. Moreover, Treadwell did arrive during trial, and was able to testify in full. The trial court did not err in refusing a continuance.

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED AUGUST 17, 1995 —
RECONSIDERATION DENIED OCTOBER 26, 1995 —

*The Outlaw Firm, Shelby A. Outlaw, Scott M. Kaye*, for appellant.

*Schrade & Richardson, Melody H. Richardson*, for appellee.