## A97A0128. QUINTANILLA v. RATHUR.
### (490 SE2d 471)

SMITH, Judge.

Appellee Baber Rathur, M.D. brought two separate actions against Pablo Quintanilla, M.D., seeking recovery on a promissory note in one action and on a lease agreement in the second. After consolidation, the parties filed cross-motions for summary judgment, and Rathur prevailed. The trial court then calculated damages and entered judgment in favor of Rathur.

Quintanilla appeals, contending that he was insulated from liability by a default provision in a contemporaneously executed sale agreement, that the transaction as a whole was modified by the parties' mutual departure, that a dispute of fact remained as to the amount of damages owing under the agreements, and that attorney fees were improperly awarded. Quintanilla's arguments concerning the contract terms are without merit, but we agree that the amount of damages remains in dispute and that insufficient notice was given of the intent to seek attorney fees pursuant to OCGA § 13-1-11.

This action arose out of an agreement between two longtime friends and business associates. In late 1990, Rathur approached Quintanilla for the first time with a proposal that Quintanilla purchase a medical practice from Rathur. Quintanilla was cautiously receptive, because of Rathur's representations that the practice was historically profitable and growth-oriented. Rathur enlisted his financial advisor to explain to Quintanilla the medical office's secure financial condition. Quintanilla contends by affidavit that he was influenced by Rathur's position as his friend and employer and that he relied on Rathur's representations and those of Rathur's financial advisor in deciding to purchase the practice.

On December 14, 1990, the parties executed three documents: (1) a sale and purchase agreement, providing for the sale of all office and medical equipment and the goodwill of the medical practice; (2) a promissory note, setting out the terms of repayment in specific reference to the terms of the sale agreement; and (3) a lease agreement, providing for the conditions of occupancy of the medical office itself,

including provisions for allocation of utilities and "base rental." Each agreement contained a separate default provision.

The default provision in the sale and purchase agreement provided: "If this agreement is not consummated in accordance with the terms and conditions of this agreement on account of default by either party, the non-defaulting party may, at his option: (a) terminate this agreement by giving written notice of such termination to the other, whereupon all rights, duties and obligations of all parties hereunder shall expire and this agreement shall in all respects become null and void, or (b) exercise such rights and remedies as may be provided for or allowed by law or in equity, including, without limitation, the right to seek and obtain specific performance of this agreement; provided, however, *neither seller nor purchaser shall have right to seek or obtain damages from the other, except attorney fees* for bringing any action under this provision." (Emphasis supplied.) Quintanilla's affidavit recites that he was shown the default provision in the sale and purchase agreement by Rathur and that he understood it to mean that "neither party would sue the other for money damages if the agreement was breached." He further understood this clause to mean that he could return the practice at any time to Rathur without suit being filed and without penalty "if our agreement did not work out."[1] The promissory note, however, contained an acceleration clause, and the lease provided for a number of remedies upon default, including acceleration of the amounts due.

The practice was unsuccessful from the start. Over the first three years, Quintanilla made only sporadic payments on the promissory note and never paid more than the base rent due under the lease. Quintanilla claims that during this time Rathur assured him that the financial problems could be "worked out." But on September 13, 1993, Rathur's attorney sent a letter informing Quintanilla that, without immediate payment of all outstanding arrearages, she "would advise Rathur to take action." Ultimately, Rathur filed these claims.

1. Quintanilla first argues that the restrictive default provision in the sale agreement and Rathur's oral assurances regarding its effect supersede the default provisions in the promissory note and lease agreement. The trial court found that "an ambiguity exists" with regard to the default provision in the sale agreement, observed that "to the extent there is any genuine conflict between these provisions . . . the first provision prevails," but found that the two provisions are not contradictory. Observing that "in seeking to determine

---

[1] But no evidence appears on the record that Quintanilla ever attempted to rescind the sale agreement, tender back the practice assets, or otherwise "return" the medical practice during the three years he operated it.

the true intent of the parties, the court should consider the entirety of the agreement and not reach a conclusion which would render the parties' actions an absurdity," the trial court concluded that the parties' true intention was to prohibit the collection of consequential damages other than attorney fees. While we agree with the trial court's ultimate conclusion that summary judgment on the issue of liability was proper, we do so on a slightly different basis.

A court may not declare a contract provision ambiguous until it applies the relevant rules of construction. *Richard Haney Ford v. Ford Dealer Computer Svcs.*, 218 Ga. App. 315, 316 (1) (b) (461 SE2d 282) (1995). In this case, application of the rules of construction reveals that the default provision in the sale agreement is unambiguous, but inapplicable by its terms to the promissory note or lease.

First, we note that an agreement may consist of multiple documents, and when instruments are executed at the same time in the course of a single transaction, they should be read and construed together. OCGA § 24-6-3 (a); *Duke v. KHD Deutz &c. Corp.*, 221 Ga. App. 452, 453 (471 SE2d 537) (1996). Second, a contract must be interpreted to give the greatest effect possible to all provisions rather than to leave a part of the contract unreasonable or of no effect. *Roland Well Drilling v. Murawski*, 193 Ga. App. 38, 40 (386 SE2d 872) (1989). "One of the most fundamental rules of construction is that a court should, if possible, construe a contract so as not to render any of its provisions meaningless. [Cit.]" *Altama Delta Corp. v. Howell*, 225 Ga. App. 78, 79 (1) (483 SE2d 127) (1997).

All three documents at issue here were executed during the September meeting consummating the sale between the two parties, and each refers to the others. As a result, they must be construed together in a manner that avoids surplusage and gives effect to all relevant provisions.

Interpreting the three relevant documents together reveals no ambiguity or conflict. The separate default provisions contained in the documents do not conflict because each provision, by its terms, applies only to the document in which it appears. A strict reading of the sale agreement reveals that a default under its terms occurs only where the actions necessary to consummate the *sale itself* are not undertaken. The sale agreement recites simply that it requires a purchase, sale, and execution of a promissory note containing certain terms. It provides for the maintenance of records and the proration of expenses until "the day of closing." Default occurs only "if [the] agreement is not consummated in accordance with [its] terms and conditions." Rathur, as the "non-defaulting party" under the default provision in the sale agreement, had the option of bringing an action "under this provision" which would have invoked the damages limitation. But Rathur never sought enforcement of the sale agreement; he

sought only recovery on the promissory note and on the lease agreement.

When the language of a contract is plain and unambiguous, the court must afford it its literal meaning, despite a party's contention that he had a different understanding of its meaning. *Cotton States Mut. Ins. Co. v. Smelcer*, 212 Ga. App. 376 (441 SE2d 788) (1994). Interpreting the default provision in the sale agreement in this manner, we find it inapplicable to a default arising from breach of the payment terms of the promissory note or lease agreement, rather than the sale agreement itself. The interpretation that Quintanilla suggests would render the default provisions in the promissory note and lease agreement meaningless and absurd, as the trial court recognized. Such a construction would require the parties to intend that the buyer of the business could operate it (as happened) for almost three years, make only two of the monthly installments on the purchase price, use all the equipment and furnishings of the medical office for that period, serve or not serve the patients, build the medical practice or allow it to disintegrate, and then walk away from the deal by paying only the seller's attorney fees.

Because no ambiguity exists, it was unnecessary for the trial court to reach the issue of admissibility of parol evidence, as urged by Quintanilla, to show Quintanilla's understanding of the default provisions. Because it is undisputed that the sale itself was consummated, the trial court correctly held that the default provision in the sale agreement did not govern a default under the promissory note or lease. A grant of summary judgment will be affirmed if it is right for any reason. *Precise v. City of Rossville*, 261 Ga. 210, 211 (3) (403 SE2d 47) (1991); *Malaga Mgmt. Co. v. John Deere Co.*, 208 Ga. App. 764, 767 (5) (431 SE2d 746) (1993).

2. Quintanilla also contends that the parties' subsequent conduct amounted to a mutual departure from the payment terms of the promissory note and lease agreement. Rathur acknowledges continually accepting lower and sporadic payments contrary to the terms of both agreements. We conclude, however, that no mutual departure occurred under the facts presented here.

While the law generally prevents one party from waiving a binding provision in a contract for the benefit of another, the conduct of the parties may be sufficient to alter the terms of an original agreement when there is evidence of a mutual, rather than unilateral, intention to depart from or disregard such terms. OCGA § 13-4-4; *Hill v. Federal Employees Credit Union*, 193 Ga. App. 44, 46 (2) (c) (386 SE2d 874) (1989). Quintanilla acknowledges he made only two payments on the promissory note in the first year. While he paid an amount designated as "base rental" under paragraph 2 of the lease agreement, Quintanilla never made any of the monthly payments

designated as "additional rent" under paragraph 4 (b) of the lease. He contends that Rathur's acceptance of his failure to make payments on both the note and the lease amounts to a mutual departure, and therefore Rathur was not authorized to institute default proceedings. *Vaughan v. Wrenn Bros., Inc.*, 163 Ga. App. 383, 384 (294 SE2d 609) (1982). We disagree.

This issue was addressed in *Lewis v. C & S Nat. Bank*, 174 Ga. App. 847, 848 (2) (332 SE2d 11) (1985). There, as here, the debtor contended that the creditor had effected a departure from the terms of the note sufficient to forbid foreclosure. This Court held that the earlier acceptance of some late and irregular payments did not demonstrate a mutual departure where many payments were missed altogether: "As a general rule, evidence of acceptance by a creditor of repeated, late, irregular payments from a debtor creates a factual question as to the formation of a quasi new agreement. [Cits.] However, the evidence in this case shows without dispute that [the debtor] was not merely late and irregular in making his payments but had failed altogether to make . . . [some] monthly installment payments which had become due as of the time the notice of foreclosure was published. Under these circumstances, [the lender] clearly was entitled pursuant to the terms of the security agreement to accelerate the entire balance due and to institute foreclosure proceedings. [Cits.]"[2] Id. See also *Evans v. Merrill Lynch &c. Svcs.*, 213 Ga. App. 808, 810-811 (5) (446 SE2d 215) (1994) (while late and partial payments may create a factual question as to the formation of a quasi new agreement, missing several payments altogether authorizes foreclosure).

In the case at bar, it is undisputed that, while Quintanilla made a number of late and partial payments which were accepted by Rathur, he failed to make approximately 20 payments under the promissory note and failed altogether to pay the "additional rent" due under the lease. While Rathur apparently told Quintanilla that the financial problems could be "worked out," nowhere does the record suggest that Rathur meant to forego payment of any monthly installment altogether. Given the lack of evidence supporting Quintanilla's contention that Rathur agreed to non-payment, as opposed to late payment, we find that Quintanilla failed to show a subsequent mutual departure from the terms of the agreements, and the trial court properly concluded that Quintanilla was obligated for the sums due.

3. Quintanilla next asserts that Rathur's acceptance of lesser

---

[2] We note that Rathur provided notice in the form of a demand letter stating his intention to rely on the exact terms of the agreement.

payments over the life of the lease agreement constituted an accord and satisfaction. The facts of this case, however, do not satisfy the requisite elements of an accord and satisfaction.

An accord and satisfaction exists where (1) there is a *bona fide* dispute as to the amount due under the agreement; (2) the dispute is between the parties and *not* limited to the mind of the debtor; and (3) the dispute existed *prior* to the debtor's tender of any amount less than that due under the agreement. OCGA § 13-4-103 (b) (1); *Treadwell v. Treadwell*, 218 Ga. App. 823, 825-826 (1) (463 SE2d 497) (1995). The court may also find an accord and satisfaction where there is an "independent agreement" between the parties stipulating that the acceptance of a lesser amount satisfies the entire debt. OCGA § 13-4-103 (b) (2); *Treadwell*, supra at 826. Quintanilla failed to present evidence sufficient to prevail on either basis.

The record reveals no evidence of a bona fide dispute as to the debt owed in this case. Quintanilla has made no effort below or on appeal to show that he contested the total amount due under the lease agreement. In addition, even if a legitimate dispute existed, it clearly was not brought to Rathur's attention while Quintanilla made payments for three years.

Nor does the record contain evidence suggesting that Rathur and Quintanilla ever reached an "independent agreement" to pay a lesser sum under the lease. In this context, an accord and satisfaction is a de novo contract valid only where there is a "meeting of the minds" as to the release of the debtor's liability. *Derosa v. Shiah*, 205 Ga. App. 106, 108 (421 SE2d 718) (1992). While Quintanilla presented evidence that he paid less than was required, no evidence exists to suggest that Rathur agreed to payment of a lesser amount on anything other than a temporary basis. The question of accord and satisfaction is generally one for the jury, but when there is no genuine issue of material fact, summary adjudication is appropriate. *Habachy v. Ga. Health Group, P.C.*, 207 Ga. App. 288, 289 (427 SE2d 808) (1993).

4. Despite our conclusion that the default provisions in the promissory note and lease are valid and enforceable, this case must be reversed because of an improper determination of damages. The trial judge, over Quintanilla's objection, entered judgment based on a schedule presented by Rathur summarizing the amount due under the promissory note and the lease agreement. Quintanilla asserts that his affidavit created a dispute of fact as to the actual amounts owed on both the note and the lease, and therefore summary judgment for Rathur on the issue of damages was improper. We agree for two reasons.

First, while the amount due under the promissory note was liq-

uidated,[3] there is a genuine dispute of fact as to the number of payments made by Quintanilla over the life of the agreement. Quintanilla claims to have made two payments during the first year of the promissory note, and it appears that the calculations supporting the trial court's judgment reflect only one. On summary judgment, statements not amounting to legal conclusions made by a party with personal knowledge of the facts are not conclusory and are admissible to create a genuine issue for trial. See OCGA § 9-11-56 (e).

Second, the parties agree that the award of damages under the lease agreement was inaccurate. The provisions in the lease required payment of a "base rental" and an "additional rent" to be calculated during the life of the lease. Under the terms of the agreement this amount is, as conceded by the parties, equal to $26,255, not $26,828.81 as the trial court found.[4] While the trial court correctly granted partial summary judgment on the issue of liability, summary judgment on the issue of damages was improper.

5. Finally, Quintanilla correctly argues that Rathur failed to meet the statutory notice requirement for an award of attorney fees. OCGA § 13-1-11 (a) (3) provides that a party seeking attorney fees in any action must provide the opposing party with at least ten days' notice of the intent to do so. Quintanilla correctly notes that Rathur's demand letter contained no mention of attorney fees. Rathur contends that the references in the demand letter to the promissory note and lease agreement are nevertheless in substantial compliance with the terms of OCGA § 13-1-11. We disagree.

The Supreme Court of Georgia in *Gen. Elec. Credit Corp. v. Brooks*, 242 Ga. 109, 118 (249 SE2d 596) (1978), held that "substantial compliance" with the notice provisions in OCGA § 13-1-11 (formerly Ga. Code Ann. § 20-506) is sufficient, and mere technical errors in the wording of such a notice will not defeat a claim for attorney fees. However, the court also listed the "matters of substance" as

---

[3] As the total amount of the debt due under the contracts was fixed, certain and ascertainable, the claims are not rendered unliquidated by our holding that the amount allegedly paid to set off the total is factually in dispute. *Gold Kist Peanuts v. Alberson*, 178 Ga. App. 253, 255 (342 SE2d 694) (1986) (claim not rendered unliquidated though party at summary judgment created factual question as to the total reduction of the total debt owed).

[4] Since the issue may be reached on remand, we note that the trial judge's assessment of prejudgment interest at a rate of 7 1/2 percent per annum was improper. Generally speaking, a claimant is entitled to an award of prejudgment interest at a rate of 7 percent per annum from the date due until the date of recovery on any liquidated debt. OCGA §§ 7-4-2; 7-4-15; *Eastern Air Lines v. Fulton County*, 183 Ga. App. 891, 892 (1) (360 SE2d 425) (1987). A deviation from the statutory percentage is authorized only where a written agreement specifies the rate. See *Atlantic States Constr. v. Beavers*, 169 Ga. App. 584, 591 (7) (314 SE2d 245) (1984). Here, no authority is cited to support the 7 1/2 percent awarded to Rathur, nor is any stipulation apparent from the contracts themselves. Though this case turns on the amount of damages actually awarded, any ultimate reassessment of prejudgment interest must be made in accordance with the controlling authority.

to which actual compliance is required, including notice "that the provisions relative to payment of attorney fees in addition to principal and interest will be enforced." Id. at 119. Unlike the lender's letter in *Gen. Electric*, Rathur's letter contained absolutely no reference to the attorney fees provision in the promissory note or, indeed, to any claim for attorney fees. And plaintiff did not remedy this deficiency via his complaint. See, e.g., *Third Century v. Morgan*, 187 Ga. App. 718, 721 (3) (371 SE2d 262) (1988). As a result, the trial court erred in awarding attorney fees.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Beasley, J., concur.*

DECIDED JULY 16, 1997 —
RECONSIDERATION DENIED JULY 31, 1997.

*Wheeler & Watson, James A. Watson, Alexander P. Levorse,* for appellant.
*Stephen H. DeBaun,* for appellee.