### A00A1944. WITHINGTON v. VALUATION GROUP, INC.
(547 SE2d 594)

PHIPPS, Judge.

Richard Withington was a salesman and independent contractor for Valuation Group, Inc. (VGI), a tax consulting firm, from 1992 to 1998. He sued VGI in 1998, claiming that it had underpaid his commissions and breached his contract by terminating it without prior notice, among other things. After hearing Withington's evidence, the trial court directed a verdict for VGI on the grounds of accord and satisfaction. We find that the evidence does not demand a verdict for VGI because a jury would be authorized to find that there was no bona fide dispute between the parties that could provide a basis for an accord and satisfaction. We therefore reverse.

The independent contractor agreement between VGI and Withington required VGI to pay Withington a monthly commission based

---

[2] *Bergmann v. McCullough*, 218 Ga. App. 353, 355-356 (3) (461 SE2d 544) (1995).

on payments it received from clients that Withington had originated. The commission was equal to 25 to 30 percent of cash receipts, depending upon the type of work performed by VGI and the date Withington secured the client. A February 3, 1997 contract amendment provided for commissions based on a percentage of gross revenues "net of expenses for travel, legal fees, temp fees & filing fees." Handwritten on the amendment, with an arrow pointing to the expenses provision, is the phrase "(extraordinary and mutually agreed upon in advance)." Termination of the contract by either party required 360 days prior written notice.

Although Withington brought in approximately $3,000,000 in business in six years, on November 13, 1997, VGI gave him written notice that his progress was unsatisfactory and that he must meet a 30-day sales effort for the contract to remain in force. On April 3, 1998, the president and vice-president of VGI met with Withington and told him, "we would like for you to leave," although they agreed he could stay through the end of April to work on existing prospects. Withington told them he would leave, but he later realized that VGI had not given him the 360 days notice the contract required.

A few days after the April 3, 1998 meeting, a tornado severely damaged VGI's offices, and the company moved to temporary facilities. Afterward, VGI no longer provided Withington with office space, and, although Withington worked on preexisting prospects out of his home, he did not bring any new business to VGI.

In August 1998, VGI deposited a monthly commission payment of $44,622.40 into Withington's account, and the related commission statement showed that the bulk of it was attributable to VGI's receipt of $161,713.67 from Inbrand Corporation. Withington learned from his Inbrand contact that Inbrand had actually paid VGI $194,000. Withington then discovered that First Image had paid VGI $12,694.92 in July, although his commission statement showed a payment of $11,844.92. Withington pointed out these discrepancies to a VGI officer, who explained that the differences were due to expenses.

Withington subsequently received a commission statement which showed corrected receipts from Inbrand and First Image, but VGI did not tender any additional commissions on those accounts. A VGI officer told Withington that VGI had placed a fifteen percent "hold back" on the two accounts in the event that VGI had to refund money to the clients. Withington testified that VGI had not previously placed any "hold back" on his commissions. Instead, if VGI refunded a client's fee, they would make a corresponding deduction in Withington's subsequent commission checks.

On September 21, 1998, Withington's attorney sent a certified letter to the president of VGI, maintaining that VGI owed $8,960.04

on the Inbrand and First Image accounts and that his contract contained no hold back provisions. On September 22, 1998, Withington composed a handwritten letter and delivered it to VGI's offices. In it, he claimed VGI had miscalculated his commission. After reading the handwritten letter, an officer of VGI told Withington, "I told you we would pay you. Stop harassing us." He advised Withington that he was no longer welcome in VGI's offices.

VGI did not respond directly to the September letters, but submitted a proposed "Separation Agreement" to Withington's attorney. Withington responded with a letter demanding payment of overdue commissions and damages for the "unlawful termination" of his contract and stating that no expenses should have been deducted from his commission payments without his approval, among other things. In turn, VGI sent Withington an undated document entitled "This Letter Is For Settlement Purposes Only," accompanied by a check dated October 1, 1998, payable to Withington, in the amount of $14,558.53. The back of the check was endorsed: "This payment is in full and final settlement of all amounts owed by payor (Valuation Group, Inc./Property Tax Group, Inc.) to payee through October 1, 1998."

The undated letter referenced an attached "reconciliation" showing how the payment was calculated, but none was attached. The letter claimed that the amount tendered represented what VGI owed Withington under its independent contractor arrangement through October 1, 1998, and that Withington had terminated the contract. The letter also provided that VGI would recalculate Withington's commissions "past, present and future" to include expense deductions if Withington did not accept the October 1 check.

On October 23, 1998, Withington corresponded with VGI, noting that the reconciliation was omitted from VGI's settlement letter. He wrote that, "We need to address *all* issues and come up with a reasonable settlement on all issues."[1] VGI subsequently provided a statement in the form of a spreadsheet showing that VGI owed Withington $14,978.91. The spreadsheet broke down receipts by client, date received by VGI, expenses, and commission percentage. The spreadsheet was presented in the same format as previous commission statements except for the column labeled expenses. The commission statements that Withington had received after January 1, 1997, had not provided for expense deductions. VGI sent Withington a second check in the amount of $420.38, which contained the same restrictive endorsements. The October 1 check and the $420.38 check together equaled the amount due as shown in the reconciliation

---

[1] (Emphasis in original.)

statement. On December 23, 1998, Withington negotiated the October 1 check. He never negotiated the $420.38 check. VGI sent Withington two more checks also marked with a statement that they constituted full and final settlement of all amounts owed by VGI to Withington through December 1, 1998, and January 31, 1999, respectively. Withington negotiated the checks in March 1999, writing "disputed — all rights reserved" along with his signature.

At trial, Withington presented evidence of approximately $56,000 in claims for underpaid commissions. He also claimed lost income of $170,000 by reason of VGI's failure to give him 360 days prior notice of contract termination.

"A directed verdict is authorized only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict."[2] On appeal, we conduct a de novo review and will uphold the grant of a directed verdict only if all the evidence demands it.[3]

An accord and satisfaction is an agreement between two parties to give and accept something in satisfaction of a right of action which one has against the other.[4] VGI maintains that, by negotiating the October 1 check, Withington accepted it in accord and satisfaction of their preexisting dispute. Withington argues that there was no "bona fide dispute" between the parties as to the amount due and that his negotiation of the October 1 check did not settle his outstanding claims against VGI.

OCGA § 13-4-103 provides:

> (a) Except as otherwise provided in this Code section, an agreement by a creditor to receive less than the amount of his debt cannot be pleaded as an accord and satisfaction unless it is actually executed by the payment of the money, the giving of additional security, the substitution of another debtor, or some other new consideration. (b) Acceptance by a creditor of a check, draft, or money order marked "payment in full" or with language of equivalent condition, in an amount less than the total indebtedness, shall not constitute an accord and satisfaction unless: (1) A bona fide dispute or controversy exists as to the amount due; or (2) Such payment is made pursuant to an independent agreement

---

[2] (Citations and punctuation omitted.) *Carden v. Burckhalter*, 214 Ga. App. 487, 488 (1) (b) (448 SE2d 251) (1994).

[3] Id.

[4] *Woodstock Road Investment Properties v. Lacy*, 149 Ga. App. 593 (254 SE2d 910) (1979).

between the creditor and debtor that such payment shall satisfy the debt.

VGI argues that, because the evidence shows that the dispute here was preexisting and known to both parties before VGI tendered the October 1 check, it was a "bona fide dispute" as a matter of law.

> To constitute accord and satisfaction by payment of less than the amount due under OCGA § 13-4-103 (b) (1), the dispute between the parties must be bona fide; the bona fide dispute must be a dispute "between the parties" and not one "confined to the mind of the sender of the check"; and the bona fide dispute between the parties must have existed previously to the debtor's tender of an amount less than the sum demanded.[5]

Withington argues that there is no "bona fide dispute" unless VGI shows that its offer to settle the dispute through an accord and satisfaction was made in good faith.[6] This argument is supported by *Sylvania Elec. Products v. Elec. Wholesalers*.[7] OCGA § 13-4-103 (b) is a codification of the holding in that case.[8]

*Sylvania Elec. Products* is followed by *Sunbelt Life Ins. Co. v. Alapaha*[9] and *Treadwell v. Treadwell*.[10] And in *Lewis v. Alfred L. Simpson & Co.*,[11] we reconfirmed that a bona fide dispute requires good faith on the part of the debtor who submits a payment in full satisfaction of a claim, even if there is a preexisting dispute between the parties.

We must determine whether the evidence here would authorize a jury to find that VGI's offer to settle its dispute with Withington, as

---

[5] (Citation omitted.) *Treadwell v. Treadwell*, 218 Ga. App. 823, 826 (463 SE2d 497) (1995).

[6] There is a longstanding principle of good faith in reaching an accord and satisfaction. In order to render valid the compromise agreement, it is not essential that the matter should be really in doubt; but it is sufficient if the parties consider it so far doubtful as to make it the subject of compromise. But it is necessary, in order to furnish a consideration for such compromise agreement, that the contention be made in good faith and be honestly believed in. (Citations omitted.) *Preston v. Ham*, 156 Ga. 223, 234 (119 SE 658) (1923).

[7] 198 Ga. 870 (33 SE2d 5) (1945).

[8] See *Sunbelt Life Ins. Co. v. Bank of Alapaha*, 176 Ga. App. 628, 630 (2) (337 SE2d 410) (1985). Although the holding in *Sylvania Elec. Products* was expressly disapproved in *Rivers v. Cole Corp.*, 209 Ga. 406, 408 (73 SE2d 196) (1952), "OCGA § 13-4-103 (b) has obviated the effect of the holding in *Rivers* and has elevated the holding in *Sylvania Elec. Prods.* to its current status as the applicable statutory law of this State with regard to accord and satisfaction." *Sunbelt Life Ins. Co. v. Bank of Alapaha*, supra at 630.

[9] Supra, 176 Ga. App. at 630.

[10] Supra, 218 Ga. App. at 826 (1).

[11] 183 Ga. App. 166, 167 (358 SE2d 262) (1987).

made through its October 1 check, was not made in good faith.

A jury would be authorized to find that Withington was dependent upon VGI to correctly report receipts used to calculate his compensation and that the origin of the dispute between Withington and VGI lay in VGI's underreporting of receipts from Inbrand and First Image. The evidence also would support a finding that VGI was not authorized by the contract to deduct expenses from Withington's commission payments without Withington's approval, but that VGI threatened to recalculate all of Withington's commissions to include expense deductions if Withington did not agree to accept the October 1 check. And the evidence would authorize a finding that VGI breached Withington's independent contractor agreement by terminating it without giving the required prior notice and that VGI tried to foreclose Withington's claims against VGI for breach of contract by offering Withington no more than what VGI owed him for unpaid commissions under its preexisting written agreement.[12] Taken together, the jury would be authorized to find that VGI acted in bad faith both in generating the underlying controversy and in its offer to settle that controversy through the tender of the October 1 check.

"[A]s a general rule, whether there is [an] accord and satisfaction is a question for the jury."[13] VGI points to a number of instances where summary judgment was nevertheless proper.[14] But the decisions finding that a dispute had been resolved by accord and satisfaction as a matter of law can be distinguished, either because the decisions rested on statutory authority apart from OCGA § 13-4-103[15] or because the debtor's good faith was not an issue.[16]

We hold that the evidence presented would allow a jury to find that the preexisting dispute between Withington and VGI was not a bona fide dispute. Accordingly, the evidence does not demand a find-

---

[12] See *Treadwell v. Treadwell*, supra, 218 Ga. App. 823.

[13] (Punctuation omitted.) *Derosa v. Shiah*, 205 Ga. App. 106, 108 (1) (421 SE2d 718) (1992).

[14] Authority presented by VGI includes *Kendrick v. Kalmanson*, 244 Ga. App. 363 (534 SE2d 884) (2000) (dispute over whether renovation work was a flat fee or on a time and materials basis); *Rabenstein v. Cannizzo*, 244 Ga. App. 107 (534 SE2d 847) (2000) (dispute involved amount of an insurance claim); *Mitchell v. W. S. Badcock Corp.*, 230 Ga. App. 352 (496 SE2d 502) (1998) (dispute over expenses); and *Habachy v. Ga. Health Group*, 207 Ga. App. 288 (427 SE2d 808) (1993) (dispute over how many hours of work remained unpaid).

[15] For example, in *Hadson Gas Systems v. Atlanta Airlines Terminal Corp.*, 200 Ga. App. 363 (408 SE2d 454) (1991), the question of whether a bona fide dispute existed as to the amount due was not part of the analysis. We cited OCGA § 13-4-101, which provides for an accord and satisfaction of a previous agreement by a subsequent agreement, but not OCGA § 13-4-103.

[16] See *Lewis v. Alfred L. Simpson & Co.*, supra, 183 Ga. App. at 167. In distinguishing two decisions in which summary judgment of accord and satisfaction was proper, we noted "the absence therein of any jury question with regard to whether the debtor's dispute of the amount owed to the creditor was bona fide." Id.

ing that an accord and satisfaction extinguished all of Withington's claims against VGI, and the trial court erred in so ruling.

*Judgment reversed. Johnson, P. J., and Smith, P. J., concur.*

DECIDED MARCH 15, 2001 —
RECONSIDERATION DENIED APRIL 2, 2001 ▮▮▮▮▮▮▮▮▮▮▮

*Stanley E. Kreimer, Jr.*, for appellant.
*McGee & Oxford, James J. Brissette*, for appellee.