A96A1613, A96A1614. LEDBETTER v. LEDBETTER; and vice versa.
(476 SE2d 626)

McMURRAY, Presiding Judge.

The following chronology is relevant to the disposition of these

appeals. Plaintiff A. W. Ledbetter, Jr. and defendant-cross-claimant R. H. Ledbetter are brothers and longtime business partners. In 1973, pursuant to a written agreement, they formed the A. W. Jr. and R. H. Ledbetter partnership for the purpose of real estate investment and property development ("the partnership"). Profits and losses were to be evenly divided, but neither partner was to receive any "compensation for services rendered to the partnership." The partners shared "equal rights in the management of the partnership business, and each partner [was to] devote such of his time and energies to said business as is agreed upon from time to time by both partners." But neither partner, without the consent of the other, was to "borrow or lend money. . . ." The partnership's holdings included a shopping center (Village Plaza which includes the Village Theater location), a mall (Riverbend Mall), a K-Mart, and a residential development (Cloudland Property).

In 1988, the brothers created the Georgia corporation, Ledbetter Brothers, Inc. ("LBI"), with plaintiff as the chairman of the board and chief executive officer. At his deposition, plaintiff affirmed that LBI, pursuant to written agreements with the partnership, "handled the property management for the partnership properties." As chairman of the board of LBI, plaintiff "did not oversee the daily operation of the corporation. The corporation [LBI] handled all of the bookkeeping, all of the leasing, all of the sales of real estate, all of the collection of rents, and [plaintiff's] job was one of taking care of problems when they came up." Plaintiff affirmed that defendant R. H. Ledbetter, "as president of [LBI] handled the day-to-day management of the partnership properties." The partnership agreement was twice amended in an attempt to address the brothers' different management philosophies. Under the June 2, 1988 amendment to the partnership agreement ("the first amendment"), the brothers agreed to improve and sell certain partnership property; divide the cash; repay approximately $2,300,000 in partnership debt owed to LBI; and then "completely sever their partnership and other business relationships." Defendant was designated the managing partner. Each brother "releases and forgives the other for all claims arising out of or associated with [any] disputed matters for all times up to the applicable time established in [the first amendment]." "All expense accounts submitted by either party to the Partnership and/or LBI shall be paid promptly. Any problem that either party has with an entry on any expense account of the other party shall be immediately discussed with said party."

The February 24, 1989 amendment to the partnership agreement ("the second amendment") similarly provided: "All of the Partnership Properties of the Partnership will be sold and the Partnership will be terminated. The Partnership and LBI will be liquidated

and dissolved. Liquidation and winding up of the Partnership shall commence upon the sale of Riverbend and the Parties shall proceed to wind-up the Partnership as soon as practicable thereafter taking into consideration good and sound business and tax factors." Robert H. Ledbetter Properties, Inc. ("RHLPI"), defendant's real estate company, was granted the exclusive listing for the sale of each of the partnership's properties, but only for a limited time.

Dr. Gary Smith, an investor, initiated the instant action in August 1990 against both A. W. Ledbetter, Jr. and R. H. Ledbetter. That lawsuit concerned the Village Theater and a lease for the property that Dr. Smith was negotiating. These claims eventually were settled, and Dr. Smith dismissed his action with prejudice. The defendant brothers, however, made numerous cross-claims against each other for alleged wrongdoing which remained pending, so the trial court realigned the parties. Plaintiff alleged that R. H. Ledbetter breached the partnership agreement, misappropriated partnership opportunities, and breached his fiduciary duty. Plaintiff demanded $250,000 plus attorney fees and costs as compensatory damages plus punitive damages. Defendant R. H. Ledbetter's counterclaim against plaintiff alleged that plaintiff A. W. Ledbetter, Jr. also breached the partnership agreement as modified by "obtaining and then using a bank card to unilaterally charge non-Partnership purchases to and obtain cash from the Partnership bank account for personal use, without the approval of either [defendant] or [George] Slickman." Defendant also sought punitive damages and the expenses of litigation.

After lengthy discovery, cross-motions for summary judgment were made. The trial court granted partial summary judgment to defendant on several issues, but denied summary judgment in part, "limiting the [viable] claims of the plaintiff to whether or not the defendant violated the terms of the partnership agreement with self-dealing so far as the Village Theater lease is concerned and denying the partnership opportunities so far as the Kroger property is concerned." The trial court also granted partial summary judgment as to liability in favor of defendant under OCGA § 9-11-56 (a) on his claim that plaintiff improperly charged unapproved expenses to the partnership, while leaving the exact amount for jury determination. This appeal followed. In Case No. A96A1613, plaintiff A. W. Ledbetter, Jr. appeals from the partial grant of summary judgment. In Case No. A96A1614, defendant R. H. Ledbetter cross-appeals from the partial denial of summary judgment. *Held*:

*Case No. A96A1613*

1. Plaintiff first contends the trial court erred in granting sum-

mary judgment against his claim that defendant "breached his fiduciary duty by wilfully interfering in the sale of partnership property." The basis for this claim is the allegation that defendant tried to use his wife as a straw entity to buy the Village Theater property, which, plaintiff contends, amounts to impermissible self-dealing.

The trial court held that plaintiff does not have any claim against defendant as an individual for any alleged mismanagement of the partnership operation nor for any breach of the Exclusive Agency Agreement, because such management was LBI's contractual responsibility. The trial court further ruled the alleged "denying the partnership opportunities" with regard to the Kroger property and alleged "self dealing" with regard to the Village Theater lease were for a jury to decide. In our view, this latter ruling renders plaintiff's first enumeration moot, since the question regarding defendant's alleged breach of fiduciary duty remains for the jury to decide.

2. Plaintiff next contends the trial court erred in "declaring as a matter of law that Plaintiff breached an expense approval requirement in the partnership agreement, and by denying Plaintiff's cross-motion for partial summary judgement against this same claim." In granting partial summary judgment (as to liability only) on this claim, the trial court's order recites: "plaintiff has acknowledged that he used the [partnership's] check card for his personal use and has further stated that the amounts involved in this use should be charged against his partnership account."

Paragraph 16 of the second amendment to the partnership agreement provided: "A list of all past and current accounts payable of the Partnership, LBI and all unreimbursed expenses of [defendant], [plaintiff] or related entities claimed to be reimbursed expenses of the Partnership or LBI will be submitted to [George] Slickman for review and, upon Slickman's approval, paid or reimbursed by the Partnership or LBI, as the case may be. Slickman shall approve or disapprove each item submitted based upon his sole determination of (a) the accuracy of the amount, (b) the purpose of the expenditure and whether it was an ordinary and necessary expenditure for the business of the Partnership and/or LBI and (c) the reasonableness of the expenditure. Slickman's decision shall be binding upon the Parties. If an expenditure or payable is not approved, then its payment shall be borne by the party authorizing the expenditure ([defendant] or [plaintiff])." As to "future expenses" incurred up to the sale of the partnership properties, paragraph 17 (d) of the second amendment to the partnership agreement states: "All expenses for maintenance, repairs (other than agreed to repairs at Village), furniture, fixtures, equipment and other expenditures shall be submitted, in advance, to [George] Slickman for approval and authorized upon approval by [defendant R. H. Ledbetter] and [George] Slickman. . . ." Paragraph

gave each party an opportunity to submit differences of opinion or of interpretation to Mark Levick ("Levick") of the firm of Altman, Kritser & Levick, P.C., "to review the Agreement and the contentions of the Parties as to the interpretation and meaning of the Agreement . . . , which shall be binding upon the Parties. . . ."

At his deposition, plaintiff affirmed his understanding that there were contractual guidelines for obtaining prior approval for certain types of expenses to be reimbursed by the partnership: "[MR. FARROW]: [T]here is a provision in the February '89 agreement that provides for George Slickman to review expenses. Do you recall that? [PLAINTIFF:] Yes, sir, I agree with that. [MR. FARROW]: And the procedure was that an expense by either partner would be submitted to Mr. Slickman and then he would review the expense; is that correct? [PLAINTIFF]: Correct. [MR. FARROW]: And then the other partner would have the opportunity to object to that expense if they wanted to; is that correct? [PLAINTIFF]: That's correct." Plaintiff further affirmed that "the whole idea behind this was once Mr. Slickman approved the expenses, then that decision was binding on the two partners." Plaintiff admitted that small items such as a $16.38 purchase he made from Radio Shack and "expensed to the partnership as an office expense . . . should have been submitted to George Slickman[, . . . but were] not submitted." Plaintiff further agreed that a charge from the Intercontinental Hotel in Washington, D.C. for $1,460.93, where plaintiff stayed with his wife and son during a franchise convention "wasn't submitted to George Slickman[, . . . although] it should have been submitted to [him]." Plaintiff "did [not] contact anybody that [he] met at that convention afterwards[, . . . and] [d]id [not] follow up at all with any letters or conversations. . . ." Plaintiff also sought partnership payment of a travel expense for "a meeting at Troutman & Sanders with Governor Sanders [. . . which expense] wasn't submitted to George Slickman." Expenses for the "repair and maintenance of [plaintiff's] BMW . . . and . . . a rental car from Smyrna . . . were expensed to the partnership at [plaintiff's] instruction [. . . but] were not submitted to George Slickman."

Contrary to plaintiff's contentions, there is no ambiguity in the contractual provisions for independent approval by George Slickman of all expenses allegedly attributable to the business of the partnership. The record in the case sub judice is replete with examples whereby plaintiff admitted he failed to comply with those established contractual provisions yet sought reimbursement. The trial court did not err in granting defendant's motion for partial summary judgment as to plaintiff's personal liability for such expenses, as a matter of contract between the parties, while reserving the exact calculation of the final amount for jury resolution. See, e.g., *Burlington Air Express*

*v. Ga. Pacific Corp.*, 211 Ga. App. 113, 115 (5) (438 SE2d 97). This enumeration is without merit.

3. Plaintiff next contends the trial court, "erred by denying summary judgment against Defendant's punitive damages demand," arguing that punitive damages cannot be based on a breach of contract.

"Unless otherwise provided by law, exemplary damages shall never be allowed in cases arising on contracts." OCGA § 13-6-10. But " '[e]ven in an action for breach of contract, where there [are] matters of record relating to fraud, punitive damages can be awarded, for "(f)raud, if found, is tortious conduct." (Cits.)' *Clark v. Aenchbacher*, 143 Ga. App. 282, 284 (1) (238 SE2d 442) (1977)." *Maddox v. Brown*, 200 Ga. App. 492, 494 (5) (408 SE2d 719). "The perpetration of a fraud is one of the specific reasons for allowance of punitive damages. [Cits.]" *Champion v. Martin*, 124 Ga. App. 275, 276 (2), 277 (183 SE2d 571). In the case sub judice, defendant alleged that plaintiff made material misrepresentations with intent to deceive while breaching his fiduciary duties. If these contentions are believed by the jury, they would constitute legal fraud, authorizing the imposition of punitive damages. *Four Oaks Properties v. Carusi*, 156 Ga. App. 422 (1) (b) (274 SE2d 783); *W. H. Mulherin Constr. Co. v. Betterton*, 135 Ga. App. 223, 224 (2) (217 SE2d 454). The trial court correctly denied plaintiff's motion for summary judgment as to defendant's claim for punitive damages arising out of an alleged breach of fiduciary duty.

## Case No. A96A1614

4. In his cross-appeal, defendant R. H. Ledbetter enumerates the trial court's denial of his motion for summary judgment regarding plaintiff's allegations of self-dealing regarding the Village Theater lease. He contends there was no breach of fiduciary duty, no misappropriated partnership opportunity, nor breach of contract arising out of his wife's negotiations with Dr. Smith to buy the executory portion of the Village Theater lease from the bankruptcy estate of the original tenant, arguing that the Village Theater lease was not a partnership opportunity. We disagree.

"The mere fact that one reposes trust and confidence in another does not create a confidential relationship. 'In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone.' *Dover v. Burns*, 186 Ga. 19, [24 (1),] 26 (196 SE 785)." *Lewis v. Alderman*, 117 Ga. App. 855 (1) (162 SE2d 440). But in certain "relationship[s] of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent,

etc." OCGA § 23-2-58. In the case sub judice, the parties owe each other the utmost good faith as between partners. Additionally, LBI and RHLPI, the exclusive broker, owe the utmost good faith to the partnership and its partners, because of the relationship of principal and agent. Equity requires agents to exercise "the highest degree of good faith as to all matters connected with the property committed to their care. [Cit.]; *Stubinger v. Frey*, 116 Ga. 396." *Oliver v. Oliver*, 118 Ga. 362, 369-370 (45 SE 232).

"Without the express consent of the principal after a full knowledge of all the facts, an agent employed to sell may not himself be the purchaser; and an agent to buy may not himself be the seller." OCGA § 10-6-24. "The policy of the law forbids an agent employed to sell [realty] to place himself in an attitude of antagonism to the interest of his principal, by associating himself with another in the purchase of the land." *Reeves v. Callaway*, 140 Ga. 101, 103 (2), 105 (78 SE 717). In our view, the trial court correctly determined that genuine issues of material fact remain as to whether defendant R. H. Ledbetter, or any entity he controlled, was acting in a manner detrimental to the best interests of the partnership, in violation of the partnership agreement and the fiduciary duty imposed by law, by permitting his wife to acquire an interest in the Village Theater lease. *Wilensky v. Blalock*, 262 Ga. 95, 97 (3), 98 (414 SE2d 1). Although the evidence does not demand a finding that R. H. Ledbetter breached the duty he owed to his partner, plaintiff A. W. Ledbetter, Jr., as plaintiff's agent for the sale of the partnership property, it would nevertheless authorize such a finding. *Johnson Realty v. Hand*, 189 Ga. App. 706, 707 (1), 708 (377 SE2d 176). Consequently, the trial court correctly denied defendant's motion for partial summary judgment.

*Judgment affirmed in the main appeal, Case No. A96A1613, and also in the cross-appeal, Case No. A96A1614. Johnson and Ruffin, JJ., concur.*

DECIDED SEPTEMBER 10, 1996 —
RECONSIDERATION DENIED SEPTEMBER 24, 1996 — ▮▮▮▮▮▮▮

*Sumner & Anderson, William E. Sumner, Gerald K. Domescik, Marguerite E. Patrick, David A. Webster*, for appellant.

*Troutman Sanders, Daniel S. Reinhardt, Scott A. Farrow, David C. Vigilante, Paul T. Carroll III*, for appellee.