A97A2138. MITCHELL v. W. S. BADCOCK CORPORATION.
(496 SE2d 502)

ANDREWS, Chief Judge.

Lymon Mitchell and W. S. Badcock Corporation entered into a contract setting forth the terms under which Mitchell operated a Badcock home furnishings dealership in Warner Robins. Badcock exercised rights under the contract to terminate the dealership and sued Mitchell to recover consigned merchandise and money claimed due under the contract. Mitchell counterclaimed for money he claimed Badcock owed him under the Warner Robins dealership contract and for money he claimed Badcock owed him as a result of the prior sale of his interest in a Badcock dealership located in Macon. He also sought punitive damages and attorney fees on the basis that Badcock fraudulently terminated the contract and withheld sums

due to him. The trial court granted summary judgment in favor of Badcock on its claim against Mitchell and on Mitchell's counter-claims.

The trial court correctly granted summary judgment on Badcock's claim against Mitchell because the evidence shows that Badcock was entitled to the money it claimed under the contract.[1] As to Mitchell's counterclaims, the trial court correctly granted summary judgment to Badcock on all but one of these claims. Mitchell's claims for money due to him over the course of the Warner Robins dealership prior to its termination and his claims for money due from the sale of the Macon dealership are precluded by either a lack of evidence in the record to support the claims or by accord and satisfaction between the parties. There is no evidence to support Mitchell's claim that Badcock defrauded him. The trial court erred, however, in granting summary judgment to Badcock on Mitchell's counterclaim based on Paragraph 11 of the Warner Robins dealership contract for commissions earned but not yet remitted upon termination of the contract. The record reflects that the contract was not terminated by Badcock for a reason which would constitute a forfeiture by Mitchell of earned but unremitted commissions under Paragraph 11.

1. Mitchell claims the trial court erred by granting summary judgment to Badcock on its claim that Mitchell owed it $6,004.28 plus interest under the terms of the Warner Robins dealership contract.[2]

The contract provided that Badcock would consign home furnishings to Mitchell for display and sale in Mitchell's store. Under Paragraphs 3 and 6 of the contract, title to all consigned merchandise and proceeds from the sale of merchandise remained in Badcock, and Mitchell was required to deposit all sales proceeds in a bank account designated by Badcock. The $6,004.28 at issue was sales proceeds to which Badcock was entitled under the terms of the contract.

Mitchell's sole contention on appeal as to this issue is that he has a claim for set-off against the $6,004.28. The set-off claim is not a defense to Badcock's claim for the sales proceeds, but may be a basis for Mitchell's counterclaim upon remittitur for commissions due under Paragraph 11 of the contract. *Russell v. KDA, Inc.*, 206 Ga. App. 397, 400 (425 SE2d 406) (1992). The trial court did not err by granting summary judgment to Badcock on this claim.

---

[1] The merchandise consigned to Mitchell by Badcock was not an issue on summary judgment. Badcock took possession of the merchandise pursuant to a prior court order.

[2] Although the contract provides that it shall be governed by Florida law, neither of the parties has pleaded or relied upon Florida law in this case. Accordingly, we will presume that any applicable Florida law is not contrary to Georgia law. *Bennett v. Union Nat. Bank &c. Co.*, 169 Ga. App. 904, 905 (315 SE2d 431) (1984).

2. Mitchell contends the trial court erred by finding that he breached the terms of the Warner Robins dealership contract and that this terminated his right to receive commissions under Paragraph 11 of the contract.

The trial court correctly found that Mitchell breached the terms of the contract. The contract provided that it could be terminated by either party, without cause, upon 30 days written notice. On June 24, 1994, Badcock's regional manager, Dennis Wilkerson, delivered notice to Mitchell that Badcock intended to terminate the contract in 30 days. On the same day, Wilkerson also requested pursuant to provisions of the contract that Mitchell allow a Badcock representative to remain on the premises to monitor the consigned merchandise during the 30-day period. In violation of the inspection provisions of the contract, Mitchell refused this request and instructed Wilkerson to leave the store. Because Mitchell refused to allow a Badcock representative in the store, Badcock stopped a delivery to the store of consigned merchandise scheduled to be made that day. From June 24, 1994, to July 2, 1994, Mitchell also violated other provisions of the contract by failing to deposit proceeds from the sale of consigned merchandise into Badcock's account. Instead, Mitchell deposited the proceeds in a bank account maintained in his wife's name. On June 24, 1994, in violation of the contract, Mitchell quit sending Badcock the sales contracts on consigned merchandise sold each day. On June 27, 1994, Mitchell refused to allow a Badcock representative to examine the store's records of account in violation of the contract.

The record clearly shows that Mitchell breached numerous provisions of the contract. The contract further provided that Mitchell's failure to comply with its terms rendered him in default and that, in the event of such default, Badcock was entitled to immediately terminate the contract by giving written notice. Pursuant to these provisions, Badcock furnished Mitchell written notice on July 1, 1994, that the contract was immediately terminated. The trial court did not err by finding that Badcock properly terminated the contract based on Mitchell's default. There is no evidence to support Mitchell's contention that Badcock fraudulently contrived the termination.

The trial court erred, however, by finding, as a matter of law, that Mitchell's misconduct precluded his recovery of earned but unremitted commissions under Paragraph 11 of the contract. Paragraph 11 of the contract provided that, upon termination of the contract for any reason, Mitchell was entitled to compensation for commissions on the sale of consigned merchandise earned by him but not yet remitted. Paragraph 11 further provided that, "[n]otwithstanding anything herein to the contrary, if this Agreement terminates by reason of the Dealer's [Mitchell's] dishonesty, misrepresentation, misconduct or similar cause, the earned but unremitted commissions of

the Dealer shall be automatically assigned upon such termination, without further action of the Dealer, to the Owner [Badcock] as minimum liquidated damages. . . ." The termination provisions of the contract provided that the contract may be immediately terminated "in the event of the Dealer's dishonesty, misrepresentation, misconduct, or similar cause, or in the event of a default under this Agreement. . . ." A default is defined elsewhere as "[t]he failure of the Dealer to comply with any of the terms of this Agreement."

Although Paragraph 11 provided for Mitchell's forfeiture of earned but unremitted commissions in the event the contract was terminated by reason of his dishonesty, misrepresentation, misconduct or similar cause, it did not provide for forfeiture if the contract was terminated for his default. Badcock immediately terminated the contract by notifying Mitchell in writing that he had failed to comply with various provisions of Paragraph 6 of the contract. Since failure to comply with any terms of the agreement is defined as a default under Paragraph 12, the record reflects that the contract was terminated by reason of Mitchell's default. Even if some of Mitchell's actions constituting a default could also be characterized as misconduct, that was not the basis upon which the contract was terminated by Badcock. Accordingly, the trial court erred by ruling that Mitchell forfeited the right to commissions under Paragraph 11 by virtue of his misconduct. Compare *Russell*, supra at 399.

3. Mitchell claims the trial court erred by failing to address his counterclaim seeking to set aside the covenant not to compete in the Warner Robins dealership contract on the basis that it is unreasonable, arbitrary and overbroad.

In effect, Mitchell sought a declaratory judgment on the validity of the covenant without any demonstration that an actual or justiciable controversy existed between the parties as to the enforceability of the covenant. This issue was not raised in Badcock's motion for summary judgment, nor was it addressed by the trial court in its order granting summary judgment. Nevertheless, in granting total summary judgment in favor of Badcock, this claim was dismissed by the trial court along with Mitchell's other counterclaims. Since there was no actual or justiciable controversy as to the covenant, the trial court's grant of summary judgment as to this counterclaim was an erroneous advisory declaratory judgment which ruled in Badcock's favor as to any future litigation over the covenant. *Business Software v. Information Assoc.*, 201 Ga. App. 565, 566 (411 SE2d 565) (1991). To the extent the trial court's summary judgment order ruled on this issue, it is nugatory and must be vacated. Id.

4. Mitchell contends the trial court erred by finding that there was an accord and satisfaction between him and Badcock as to amounts claimed by him under the Warner Robins dealership contract.

The contract provided that Mitchell was to receive commissions equal to 25 percent of the sales price, insurance premiums, and finance charges collected by Mitchell attributable to the sale of consigned merchandise. Each month that Mitchell operated the dealership, he received a settlement statement from Badcock. Each settlement statement contained the statement that it was settlement in full for the prior month, and it showed the collections made on the sales, all adjustments made for any charges against the commissions, and the total amount of commissions to which Mitchell was entitled. Each settlement statement was accompanied by a check for the amount of the commissions due to Mitchell as calculated by Badcock. Mitchell reviewed each of the settlement statements and accepted and deposited the commission checks.

Mitchell, nevertheless, contends that certain amounts shown as deductions from the commissions on the settlement statements should not have been deducted. He claims that an item called factory labor charges assessed on appliances and electronic merchandise to cover warranty charges should not have been deducted because he does not believe Badcock pays the deducted fee to the manufacturers. He admits, however, that he knew of the existence of the charges at the time he became a Badcock dealer and that he decided to accept the charges and remain a dealer. There was also evidence that Mitchell had incurred no expense related to warranty claims, despite obligations imposed on dealers under the contract, and that Badcock had assumed some obligations relating to warranty claims. Mitchell also claims that Badcock wrongfully deducted amounts from his commission for insurance and advertising without proof that it had purchased these items. These deductions were shown on each monthly settlement statement accepted by Mitchell. The evidence shows that, under the terms of the contract, Badcock was authorized to deduct the cost of the insurance and advertising it purchased for the benefit of Mitchell's store and that the deductions on each settlement statement were for the purchased amounts. There is no evidence to support Mitchell's claim that Badcock fraudulently deducted these sums from his commissions.[3]

Moreover, the trial court correctly concluded that these claims were precluded by accord and satisfaction between the parties occurring when Mitchell accepted, without protest, the monthly commission checks and the itemized monthly settlement statements showing the deductions from the commission in full satisfaction of the commission due. OCGA §§ 13-4-101; 13-4-103 (b); *Chrietzberg v. Kris-*

---

[3] Mitchell also claims that Badcock violated a confidential relationship between the parties, and that the contract was voidable because of duress. There is no basis for either of these claims.

*topher Woods, Ltd.*, 162 Ga. App. 517 (292 SE2d 100) (1982); compare *Lewis v. Alfred L. Simpson & Co.*, 183 Ga. App. 166 (358 SE2d 262) (1987).

5. Mitchell claims the trial court erred by finding that there was an accord and satisfaction as to amounts claimed by him under the Macon dealership contract.

Mitchell testified in his deposition that his sole claim for amounts due under the Macon dealership contract arose from his contention that, when he sold his interest in the Macon dealership to another dealer, Badcock erroneously reduced the amount of accounts receivable to which he was entitled. To facilitate the sale, Badcock prepared a "sale of earned commission summary" which set forth the reductions to the accounts receivable. Although Mitchell was aware of the reductions and disagreed with the calculation, he accepted them and signed the transfer documents closing the sale on those terms. After the sale, Badcock informed Mitchell that it believed his accounts receivable had been erroneously overstated in the sale, but Mitchell refused any further reduction stating that the parties had a final settlement. For the reasons stated in Division 4, supra, there was no error in the trial court's conclusion that Mitchell's claim was precluded by an accord and satisfaction pursuant to the sale.

6. Mitchell contends the trial court erred by granting summary judgment to Badcock on his claims for punitive damages and attorney fees. Since the claims for these damages were dependent upon the counterclaims properly dismissed by the trial court, there was no error in the grant of summary judgment. We find no basis for the award of punitive damages or attorney fees on Mitchell's surviving counterclaim for commissions due under Paragraph 11 of the Warner Robins dealership contract.

*Judgment affirmed in part, reversed in part, and vacated in part. Pope, P. J., and Johnson, J., concur.*

DECIDED JANUARY 27, 1998.

*Kenneth E. Lucas, Alex H. Morrow*, for appellant.
*Martin, Snow, Grant & Napier, John T. McGoldrick, Jr.*, for appellee.