A98A2268. NEBRASKA PLASTICS, INC. v. HARRIS et al.

(512 SE2d 388)

SMITH, Judge.

The issue in this appeal is whether the trial court correctly concluded that the parties to a contract were relieved of their obligations by an alleged subsequent agreement. Because we conclude that genuine issues of material fact exist as to whether the parties entered into a valid subsequent agreement and, if so, whether an accord and satisfaction occurred, we reverse.

In January 1997, Nebraska Plastics, Inc. (Nebraska Plastics) entered into a "warehousing agreement" with Howard Harris and Lee Harris, d/b/a Country Estate Fence of Georgia (collectively referred to as "CEFG"), for the warehousing, fabrication, and distribution of "Country Estate Fence" products. Under this agreement, Nebraska Plastics consigned inventory to CEFG, and CEFG was required to promote and fabricate "Country Estate Fencing." Among other things, CEFG also agreed to provide to Nebraska Plastics a month-end count of all consigned inventory and a surety bond in the

---

amount of $500,000. The warehousing agreement also contained a provision permitting termination upon service of a 90-day written notice delivered by certified mail.

The record also contains a subsequent agreement reciting the parties' desire to terminate the warehousing agreement. Under this "termination agreement" Nebraska Plastics was required to pick up remaining consigned inventory in the possession of CEFG, and simultaneous with the loading of this inventory, the parties were to take a physical inventory.[1] The agreement also stated that the warehousing agreement would be terminated "[u]pon the completion of Nebraska Plastics, Inc.'s pick-up of the remaining consigned inventory."

Nebraska Plastics filed this action alleging breach of the warehousing agreement and conversion. According to the complaint, CEFG repudiated the warehousing agreement by informing Nebraska Plastics that it no longer intended to perform its obligations under it and breached the warehousing agreement by failing to provide an accurate count of the consigned inventory, to insure the property, and to provide a surety bond. The conversion count was based on CEFG's alleged refusal to return all inventory, equipment, and property in its possession. Upon CEFG's motion, the trial court granted summary judgment to CEFG, concluding that the termination agreement served as an accord and satisfaction of any claims arising from the warehousing agreement.

We agree with Nebraska Plastics that summary judgment was erroneously granted in favor of CEFG. To prevail on summary judgment, the movant has the burden of showing that no genuine issues of fact exist for jury resolution. OCGA § 9-11-56; *Popovich v. Bekaert Corp.*, 222 Ga. App. 395 (474 SE2d 286) (1996). CEFG has failed in this regard.

Several genuine issues of fact exist for jury resolution. An issue exists, for example, as to whether the parties entered into a binding contract terminating the warehousing agreement. The termination agreement was not signed by all parties. It is true that assent to a contract may be given without signatures. *Century 21 Pinetree Properties v. Cason*, 220 Ga. App. 355, 356 (2) (a) (469 SE2d 458) (1996). But here, we cannot determine as a matter of law that all parties assented to the termination agreement. It appears from the limited record before us that Nebraska Plastics drafted the agreement and offered it to CEFG. After the agreement was signed on CEFG's

---

[1] Upon the completion of the inventory, CEFG was required to pay to Nebraska Plastics for all consigned inventory not accounted for in the inventory, less any amounts owed to CEFG. Furthermore, the agreement provided that if the amount owed to CEFG exceeded the amount owed to Nebraska Plastics, Nebraska Plastics was to pay this excess to CEFG.

behalf by Lee Harris and Howard Harris, counsel for CEFG then sent, via fax, a letter to the president of Nebraska Plastics, Rex German, reciting that it was accompanied by a copy of the signed termination agreement.[2] Counsel recited his understanding that the agreement superseded and terminated the warehousing agreement and specifically stated, "If this Termination Agreement is still acceptable, please have the same executed by you . . . and fax a copy of same to me as soon as possible. Once the Termination Agreements [sic] have been fully executed we can proceed with a timely and orderly settlement of this matter." This statement was some evidence showing that CEFG believed that no binding contract had yet been achieved and, conversely, that the termination agreement would become binding only after the president of Nebraska Plastics signed it. Although signature lines for German appeared on the termination agreement, it does not appear from the record that anyone on behalf of Nebraska Plastics signed this agreement. Questions of fact clearly exist as to whether the parties entered into an enforceable agreement.

Moreover, even were we to assume that a valid termination agreement was created, questions of fact exist as to whether that agreement constituted an accord and satisfaction. We first note that the warehousing agreement contains a choice of law provision reciting that the agreement shall be governed under the laws of Nebraska. But neither party has asserted this provision either below or in this court. In fact, both parties argue Georgia law with regard to whether an accord and satisfaction occurred. We therefore consider only Georgia law in addressing the issue. See *Rohm & Haas Co. v. Gainesville Paint &c. Co.*, 225 Ga. App. 441, 443 (2) (b), n. 3 (483 SE2d 888) (1997) (where parties presented Georgia law to trial and appellate courts despite choice of law provision requiring that law of another state govern, mutual departure from provision occurred).

As argued by CEFG, the termination agreement provided for termination of the warehousing agreement when Nebraska Plastics picked up its remaining consigned inventory. The parties do not appear to dispute that they eventually completed the return of the consigned inventory in CEFG's possession. Assuming, without deciding, that the termination agreement was binding on the parties, we therefore also assume that the warehousing agreement was terminated by subsequent agreement, as was the contract in *Pierson v.*

---

[2] We note that other correspondence in the record shows that this facsimile, sent on April 15, 1997, did not include a copy of the contract but that a copy of the contract was faxed to Nebraska Plastics the next day. This creates a question of fact as to whether CEFG's acceptance of the termination agreement was provided to Nebraska Plastics, as required by Nebraska Plastics, on April 15.

*Herrington*, 138 Ga. App. 463 (226 SE2d 299) (1976). But also as in *Pierson*, we cannot say, as a matter of law, that this termination served as an accord and satisfaction of all claims and obligations arising under the prior agreement.

"Accord and satisfaction occurs where the parties to an agreement, by a subsequent agreement, have satisfied the former agreement, and the latter agreement has been executed. Like any other contract, accord and satisfaction requires a meeting of the minds as to the subject matter embraced therein, if it is to be valid and binding. Where there is no agreement to settle all matters in dispute, no accord and satisfaction result. Furthermore, as a general rule, whether there is accord and satisfaction is a question for the jury." (Citations and punctuation omitted.) *Derosa v. Shiah*, 205 Ga. App. 106, 108 (1) (421 SE2d 718) (1992). See also *Popovich*, supra at 396; *Wallace v. Harrison*, 166 Ga. App. 461, 464-466 (2) (304 SE2d 487) (1983).

Although the warehousing agreement may have been terminated by the subsequent agreement, the termination agreement does not contain language showing an "agreement to settle all matters in dispute." (Citations and punctuation omitted.) *Derosa*, supra at 108. Nor does it purport to settle "all claims arising from prior alleged breaches of the [warehousing] contract." *Pierson*, supra at 465. See also *Derosa*, supra at 108-109 (separation notice given to employee said nothing about satisfaction of any other claims).

Additionally, a jury question exists as to whether the parties intended that the termination agreement constituted an accord and satisfaction extinguishing all obligations under the warehousing agreement. The contracts themselves do not show the parties' mutual intent that execution of the termination agreement would satisfy all obligations that arose under the warehousing agreement. Although the record contains the letter, discussed above, from CEFG's counsel to Nebraska Plastics stating his understanding that the termination agreement superseded the warehousing agreement, the record does not show that the termination agreement was signed by Nebraska Plastics. Furthermore, the record also contains the affidavit of the president of Nebraska Plastics, who stated that it was never his "understanding or intention that the termination agreement being discussed would serve to replace the previously-executed warehousing agreement."[3] Questions of fact clearly exist concerning the parties' intent concerning the scope of the termination agreement, and the trial court therefore erred in granting summary judg-

---

[3] With regard to this affidavit, we note that "parol evidence is admissible to show the scope of the agreement that forms the basis of the alleged accord and satisfaction. [Cit.]" *Wallace*, supra at 464.

ment to CEFG.

*Judgment reversed. Johnson, C. J., and Barnes, J., concur.*

DECIDED FEBRUARY 17, 1999.

*William M. Calhoun, Jr.*, for appellant.
*Davis & Forehand, John N. Davis, David A. Forehand, Jr.*, for appellees.