A01A0958. PAUL DEAN CORPORATION et al. v. KILGORE.
(556 SE2d 228)

RUFFIN, Judge.

James Kilgore purchased Smyrna Cleaners & Laundry (the "laundry") from Paul Dean Corporation and signed a promissory note. To secure the note, Kilgore granted the corporation a security interest in the laundry. Kilgore subsequently defaulted on the promissory note, and PDC threatened foreclosure proceedings. Kilgore then sued PDC and Paula Ortiz, president of PDC, (collectively "PDC") asserting that he had reached a binding settlement agreement with PDC. Kilgore sought injunctive relief, a declaratory judgment, attorney fees, and punitive damages. Following a bench trial, the trial court determined that PDC and Kilgore had reached a valid settlement agreement, which Kilgore had honored. The trial court further concluded that PDC's foreclosure actions "were not justified," and it awarded Kilgore $10,000 in punitive damages. PDC filed this

appeal, asserting multiple enumerations of error.[1] For reasons that follow, we affirm in part and reverse in part.

The relevant facts demonstrate that, on August 1, 1996, PDC sold the laundry to Kilgore for $125,000. The sales contract required Kilgore to pay $25,000 at closing and to sign a promissory note for the balance of the purchase price. The contract provided that, beginning on September 1, 1996, Kilgore would pay six monthly installments of $1,219.80, followed by a balloon payment of the remainder of the loan on March 1, 1997. PDC retained a security interest in the laundry.

In connection with the sale, Ortiz signed a "Consent Agreement for Sale of Collateral and Assignment of Lease" with PDC's landlord, who originally sold PDC the laundry and held a security interest in various laundry assets. This agreement provided that the "[p]urchaser" of the laundry would pay approximately $101,000 of the purchase price by assuming two notes originally given by Ortiz and another member of her family to First Family Financial Services. Kilgore did not sign this agreement.

Kilgore made the six monthly payments required by the contract. In February 1997, however, Kilgore informed Ortiz that he would not be able to make the March balloon payment. Instead, Kilgore continued to make monthly payments of $1,219.80 through June 1997. On June 27, 1997, PDC notified Kilgore that he was in default of the promissory note and security agreement, and it gave Kilgore ten days to cure the default. When Kilgore failed to cure, PDC informed him that it planned to foreclose on the property.

According to Kilgore, he and PDC reached a settlement agreement prior to foreclosure. A July 22, 1997 letter from Kilgore's attorney to PDC's attorney purported to memorialize that agreement. The letter enclosed a check in the amount of $59,625.02, payable to First Family Financial Services and PDC, and stated:

> Under the terms of the Agreement, Mr. Kilgore is to tender this sum, representing outstanding principal and interest, on a note held by First Family from Paula Glover-Ortiz. Further, Mr. Kilgore will pay the monthly installments due on a mortgage held by First Family from Mr. Joe Wells [Ortiz's father] for a period not to exceed 24 months and will pay, in full, the balance due on said note and deed to secure debt on or before July 1999. This agreement is predicated upon the outstanding balance on the Wells note being no more than $40,000.00. Your client will immediately mark the note from

---

[1] PDC also filed a motion to strike appellee's revised brief, which we hereby deny.

Mr. Kilgore "paid in full" and release its security interest in the assets of the business known as Smyrna Cleaners.

Kilgore's attorney requested confirmation of these terms so that he could "finalize an agreement," but no finalized agreement was signed by the parties. Nevertheless, PDC accepted the check, which was used to pay off the Ortiz loan. In addition, on August 1, 1997, Kilgore sent PDC's attorney a second check for $2,500, which stated on its face "[s]ettlement/Paul Dean Corp." This check represented payment for attorney fees, which Kilgore allegedly agreed to pay as part of the settlement.

Kilgore began making payments in accordance with the July 1997 letter. According to Kilgore, however, he never received the note marked "paid in full" as required by the agreement. In November 1997, Kilgore wrote PDC's attorney requesting the documentation, and PDC's attorney responded that he would urge his client to "comply with the Agreement." Rather than forwarding the documentation, in January 1998, PDC notified Kilgore that he was still in default of the original promissory note and, once again, threatened foreclosure.

Before PDC began foreclosure proceedings, Kilgore filed suit against PDC.[2] In his complaint, Kilgore alleged that the July 1997 settlement agreement governed his relationship with PDC. However, PDC denied having reached any such settlement with Kilgore and maintained that Kilgore was in default of the original promissory note and security agreement. The trial court agreed with Kilgore and found that PDC had breached the settlement agreement. The trial court awarded Kilgore $10,000 in punitive damages, which was offset by the $31,775.37 that Kilgore still owed PDC.

1. The crux of this appeal is whether the parties reached a settlement agreement in July 1997.

PDC's argument in this regard is somewhat unclear. It vigorously asserts that the settlement agreement was not a valid novation. "Novation" is a term of art, which "signifies a very particular type of accord or modification."[3] A novation acts to extinguish the original obligation.[4] Because Kilgore still had to pay the original indebtedness under the settlement agreement, we agree that it was not a novation.[5] "[A]lthough every novation involves a new contract,

---

[2] The record demonstrates that Kilgore filed two suits — one against PDC and another against Ortiz, which the trial court consolidated.

[3] *Lindenberg v. First Fed. Sav. &c. Assn.*, 528 FSupp. 440, 443 (III) (A) (N.D. Ga. 1981), aff'd, 691 F2d 974 (11th Cir. 1982).

[4] See *Randall v. Norton*, 192 Ga. App. 734, 736 (2) (386 SE2d 518) (1989).

[5] See id.

not every new contract involves [a] novation."[6] Thus, the agreement between PDC and Kilgore may be enforceable even if it is not a novation.[7]

The new agreement between PDC and Kilgore is more accurately characterized as an accord and satisfaction. "Accord and satisfaction occurs where the parties to an agreement, by a subsequent agreement, have satisfied the former agreement, and the latter agreement has been executed."[8] Whether an accord and satisfaction has been reached is generally an issue for the factfinder.[9] Here, the evidence shows that PDC accepted and negotiated the checks Kilgore tendered in connection with the settlement agreement. It follows that the trial court was authorized to conclude that there was an accord and satisfaction between the parties.[10]

PDC also appears to assert that the evidence was insufficient for the trial court to find that *any* contract was formed. We disagree.

"Appeals from bench trials, where the trial judge sits as the trier of fact and has the opportunity to assess the credibility of the witnesses, are reviewed under the clearly erroneous standard."[11] And we will not disturb a trial court's findings if there is any evidence to support them.[12] Here, there is ample evidence to support the trial court's conclusion that the parties reached a settlement agreement in July 1997, including the fact that Kilgore's attorney wrote a letter memorializing the agreement and forwarding a check to PDC's attorney in the amount of $59,625.02, which was negotiated. Kilgore also paid PDC $2,500 for attorney fees that Kilgore contended were part of the settlement. And PDC's attorney referenced the settlement agreement when Kilgore sought to obtain documentation that the loan in Ortiz's name had been paid in full. Under these circumstances, the trial court's conclusion that the parties reached a settlement agreement was not clearly erroneous.

To the extent that PDC contends the agreement is unenforceable because the parties never signed it, this contention lacks merit. As this Court has recognized, "[i]f a settlement agreement is disputed, it must be in writing to be enforceable. Ideally, a writing satisfying this requirement consists of a formal written agreement signed by both parties. But letters prepared by the parties' attorneys may suffice if

---

[6] *Lindenberg,* supra.

[7] See id.; see also *Randall,* supra.

[8] (Punctuation omitted.) *Nebraska Plastics v. Harris,* 236 Ga. App. 499, 502 (512 SE2d 388) (1999).

[9] See id.

[10] See *Mitchell v. W. S. Badcock Corp.,* 230 Ga. App. 352, 355-356 (4) (496 SE2d 502) (1998).

[11] *Smith v. Direct Media Corp.,* 247 Ga. App. 771-772 (544 SE2d 762) (2001).

[12] See id. at 772.

they memorialize the terms of the agreement."[13] Accordingly, the trial court was authorized to conclude that the letter from Kilgore's attorney to PDC's attorney, which evidently was provided to Ortiz, constituted an enforceable agreement.[14]

2. PDC contends that the trial court erred in concluding that Kilgore's complaint stated a claim for which relief could be granted. According to PDC, Kilgore is not entitled to injunctive relief because he defaulted on the original promissory note and, thus, has unclean hands. PDC also asserts that Kilgore is not entitled to declaratory judgment because he defaulted on the original agreement, and PDC was entitled to foreclose. We find both declaratory judgment and injunctive relief appropriate under the circumstances.

"The granting of injunctive relief lies in the sound discretion of the trial judge."[15] Here, Kilgore sought to enjoin PDC from foreclosing until the trial court could "adjudicate the rights of the parties." Indeed, the purpose of an "injunction is to preserve the status quo of the parties pending a final adjudication of the case."[16] As the parties disputed which agreement governed their relations, the trial court did not abuse its discretion in concluding that injunctive relief was appropriate.

PDC argues that, under the equitable principle of "unclean hands," Kilgore is not entitled to equitable relief, such as an injunction. Again, PDC's argument is predicated on Kilgore's default on the original promissory note and PDC's contention that no settlement agreement had been reached. The trial court, however, concluded that the parties reached a valid settlement. Where, as here, the trial court resolves conflicts in the evidence in connection with granting an interlocutory injunction, we will not disturb that court's ruling as an abuse of discretion unless the ruling was based on an erroneous interpretation of the law.[17] As PDC's argument on appeal flows from factual disputes, it presents no basis for reversal.

We find PDC's argument that Kilgore was not entitled to declaratory judgment equally unavailing. Under the Declaratory Judgment Act,

> a court has the power to issue declaratory judgments in cases of actual controversy and in any civil case in which it

---

[13] *Vildibill v. Palmer Johnson of Savannah, Inc.*, 244 Ga. App. 747, 748-749 (1) (536 SE2d 779) (2000). See also *Capitol Materials v. Kellogg & Kimsey, Inc.*, 242 Ga. App. 584, 587 (4) (530 SE2d 488) (2000).

[14] See id.

[15] (Punctuation omitted.) *Penland v. Corlew*, 248 Ga. App. 564, 566 (1) (547 SE2d 306) (2001).

[16] (Punctuation omitted.) Id.

[17] *Covington v. D. L. Pimper Group, Inc.*, 248 Ga. App. 265, 267 (546 SE2d 37) (2001).

appears to the court that the ends of justice require that the declaration should be made. The object of the declaratory judgment is to permit determination of a controversy before obligations are repudiated or rights are violated. In order to obtain a declaratory judgment, a plaintiff must show that he is in a position of uncertainty or insecurity because of a dispute and of having to take some future action which is properly incident to his alleged right, and which future action without direction from the court might reasonably jeopardize his interest.[18]

Here, there was an actual dispute as to which agreement governed Kilgore's obligations to PDC, and Kilgore was uncertain because of that dispute. Accordingly, declaratory relief was appropriate.

3. PDC also asserts that, under the purchase agreement, Kilgore assumed the two promissory notes given by Ortiz and another member of her family to First Family Financial Services. Such assumption allegedly occurred in the "Consent Agreement for Sale of Collateral and Assignment of Lease," which was executed in connection with the sale of the laundry. As discussed above, however, Kilgore never signed that consent agreement. Accordingly, the trial court concluded that he did not assume the two notes. We agree with the trial court.

OCGA § 13-5-30 (2) provides, in pertinent part, that, in order to be binding, "[a] promise to answer for the debt . . . of another" must be in writing and signed by the party against whom the agreement is being enforced. Here, PDC asserts that, although Kilgore did not sign the "Consent Agreement for Sale of Collateral and Assignment of Lease," he signed other documents that were executed contemporaneously, including the memorandum of sale, security agreement, promissory note, and landlord's consent to assignment. Accordingly, PDC contends that Kilgore is bound by the "Consent Agreement for Sale of Collateral and Assignment of Lease." We disagree.

It is true that "[a]ll contemporaneous writings shall be admissible to explain each other."[19] What PDC fails to recognize is that Kilgore never executed the "Consent Agreement for Sale of Collateral and Assignment of Lease." Accordingly, unless PDC can point to an agreement that Kilgore actually executed indicating he agreed to assume the notes, Kilgore cannot be bound by the agreement that he

---

[18] (Punctuation and footnotes omitted.) *Head v. DeKalb County*, 246 Ga. App. 756, 760 (2) (542 SE2d 176) (2000).

[19] (Punctuation omitted.) *Baker v. Jellibeans, Inc.*, 252 Ga. 458, 459 (1) (314 SE2d 874) (1984); OCGA § 24-6-3 (a).

did not sign.[20] As the Supreme Court has noted, the overarching premise is that "[p]eople should do what they say they will do; and the law will require competent adults to do what they voluntarily promise to do."[21] Here, however, the documents, when read together, do not show that Kilgore promised to assume the loans. It follows that the trial court did not err in concluding that Kilgore was not bound by the "Consent Agreement for Sale of Collateral and Assignment of Lease."

4. PDC asserts that the trial court erred in failing to award it attorney fees. According to PDC, the trial court "completely overlooked the fact that this is a foreclosure and suit on a note in default" and that PDC was entitled to such fees under the terms of the original agreement. What PDC overlooks, however, is that the trial court concluded that a new agreement had been reached, which Kilgore had not breached. Thus, this alleged error presents no basis for reversal.

5. In PDC's final enumeration of error, it contends that the trial court erred in awarding punitive damages to Kilgore. We agree. At the heart of Kilgore's complaint is his assertion that PDC breached the terms of the settlement agreement. It is axiomatic that "punitive damages are not recoverable for breach of contract, even if the breaching party acted in bad faith as [Kilgore] contends in this case."[22] If, however, there is evidence of fraud, punitive damages can be awarded, as fraud constitutes tortious conduct.[23]

Here, it does not appear that the trial court based its award on fraud. Indeed, the trial court expressly rejected Kilgore's contention that PDC made material misrepresentations.[24] Rather, the trial court's award of punitive damages was predicated upon its finding that PDC's "actions [were] based on malice, and not on any justifiable claim against [Kilgore]." It is clear, however, that PDC's actions constituted a breach of the settlement agreement, which is an insufficient basis to sustain an award of punitive damages. It follows that the trial court erred in awarding such damages.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Ellington, J., concur.*

---

[20] See OCGA § 13-5-30, which requires that the writing be "signed by the party to be charged therewith or some person lawfully authorized by him." Cf. *Jellibeans,* supra at 460 (1) ("Here, the writings are contemporaneous and signed and the requirements of the Statute of Frauds are satisfied thereby.").

[21] *Jellibeans,* supra at 458 (1).

[22] *Mikart, Inc. v. Marquez,* 211 Ga. App. 209, 212 (6) (438 SE2d 633) (1993); OCGA § 13-6-10.

[23] See *Ledbetter v. Ledbetter,* 222 Ga. App. 858, 863 (3) (476 SE2d 626) (1996).

[24] Cf. id.

DECIDED NOVEMBER 7, 2001 —
RECONSIDERATION DENIED NOVEMBER 28, 2001.

*Browning & Tanksley, George T. Smith,* for appellants.
*Bentley, Bentley & Bentley, Cecil G. McLendon, Jr., Donald L. Mize,* for appellee.