A04A1902. USA MANUFACTURING CORPORATION
v. PERFECTION-SCHWANK, INC.
(610 SE2d 600)

MIKELL, Judge.

Defendant USA Manufacturing Corporation ("USA") appeals from the trial court's grant of partial summary judgment to plaintiff Perfection-Schwank, Inc. ("Schwank"), in the underlying breach of contract action. For reasons explained below, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

So viewed, the record shows that on or about November 20, 2001, USA executed a promissory note for $284,325, which was the amount that it owed Schwank in connection with the purchase of residential heaters. Under the terms of the note, payment was due in full by the maturity date, May 14, 2002; however, USA failed to satisfy the note. There is evidence in the record that as of September 11, 2002, the balance on the note was $200,267.35.

On June 18, 2002, Schwank filed suit against USA alleging breach of contract. In its answer, USA admitted liability but disputed the amount of damages owed. Schwank moved for judgment on the

pleadings on October 18, 2002, but a hearing was not held until one year later, on October 27, 2003. During the time between the filing of the motion and the hearing, the parties attempted to reach a settlement. George Horich, the president and general manager of Schwank, sent a proposed settlement agreement to William E. Daniels, the president of USA, dated August 14, 2003. Under the proposed agreement, USA would pay Schwank the total sum of $167,642.79 in monthly payments of $10,000 each, with the entire amount to be fully paid by November 5, 2004. The proposed agreement required USA's consent to the entry of judgment against it in Georgia and Indiana for any outstanding indebtedness if it did not strictly adhere to the terms of the settlement agreement.[1] It further provided that Schwank would provide fuel change-over kits, also called "conversion kits," to USA, the cost of which was included in the $167,642.79 owed to Schwank. Horich's signature appeared on the third page of the three-page document. In a letter accompanying the proposed agreement, Horich directed Daniels to sign the agreement and to provide two checks: the August 2003 payment of $10,000 and another in the amount of $3,785.85 to cover the cost of the conversion kits.

Daniels did not agree with all of the terms in Schwank's proposed agreement. Instead, he altered the first two pages of the agreement, reducing the total indebtedness to $161,455.19, changing the monthly interest rate from 1.0 percent to 0.4 percent, and changing the dates of the monthly payments. The changes to the agreement were made in such a way that the second page matched up perfectly with the unaltered third page containing Horich's signature. On August 25, 2003, Daniels returned the signed agreement to Horich without commenting on the changes. He also sent two checks in the amounts of $10,000 and $3,785.85.

On behalf of Schwank, Horich sent a letter to Daniels on September 2, 2003, refusing to accept the changes to the proposed settlement agreement. The letter expressly stated that "[t]he contract will not be considered executed until the enclosed original pages are initialed by yourself and the September payment is received." It is undisputed that Daniels never initialed the original pages of Schwank's proposed agreement and that USA never provided the September payment. Schwank negotiated the two checks provided by USA on or about September 8, 2003. According to Daniels, USA never received the conversion kits from Schwank.

On October 27, 2003, USA amended its answer to raise the defense of accord and satisfaction. After a hearing on October 27,

---

[1] USA is an Indiana corporation with its principal place of business located in Lebanon, Indiana.

2003, the trial court converted Schwank's motion for judgment on the pleadings to a motion for summary judgment, granted partial summary judgment to Schwank on the issue of liability, and denied the motion as to the amount of damages owed under the note. The court found that there was no meeting of the minds during the parties' settlement negotiations and, therefore, no settlement agreement was reached. The court further concluded that no accord and satisfaction resulted from Schwank's acceptance of the two checks, finding that the checks "were merely payments to be applied to the total amount owed under the note at issue in this case." It is from this order that USA appeals.

1. USA argues that the trial court erred in granting summary judgment on the issue of liability because there was a genuine issue of material fact about whether the parties reached an accord and satisfaction. USA contends that the revised settlement agreement amounted to a satisfaction of the promissory note. We disagree.

"Whether a settlement is an enforceable agreement is a question of law for the trial court to decide." (Citation omitted.) *Auto-Owners Ins. Co. v. Crawford*, 240 Ga. App. 748, 749 (1) (525 SE2d 118) (1999). USA is correct that "[a]s a general rule, whether there is an accord and satisfaction is a question for the jury." (Punctuation and footnote omitted.) *Withington v. Valuation Group*, 249 Ga. App. 8, 13 (547 SE2d 594) (2001). However, there are cases where the issue of accord and satisfaction has been properly decided on summary judgment. See, e.g., *Kendrick v. Kalmanson*, 244 Ga. App. 363, 364 (534 SE2d 884) (2000); *Rabenstein v. Cannizzo*, 244 Ga. App. 107 (534 SE2d 847) (2000); *Mitchell v. W. S. Badcock Corp.*, 230 Ga. App. 352, 356 (4) (496 SE2d 502) (1998). Thus, as a preliminary matter, the trial court did not err in considering the motion.

An accord and satisfaction occurs when "the parties to an agreement, by a subsequent agreement, have satisfied the former agreement, and the latter agreement has been executed." OCGA § 13-4-101. "An accord and satisfaction is a contract, which requires a meeting of the minds to render it valid and binding. A definite offer and complete acceptance, for consideration, create a binding contract." (Citations omitted.) *Moreno v. Strickland*, 255 Ga. App. 850, 852 (1) (567 SE2d 90) (2002). See also *Georgialina Enterprises v. Frakes*, 250 Ga. App. 250, 253 (551 SE2d 95) (2001). Under OCGA § 13-3-1, one of the essential requirements of a valid contract is "the assent of the parties to the terms of the contract." It is clear from the record that there was no meeting of the minds during the settlement negotiations between Schwank and USA. Neither party accepted the terms of the other's proposed settlement agreement.

The only evidence in support of USA's argument of the existence of an accord and satisfaction is Schwank's negotiation of the two

checks. However, there is nothing in the record demonstrating that USA conditioned acceptance of the checks on the satisfaction of the note. In fact, it was not unreasonable for Schwank to treat the two checks as partial payment for the debt. The record reveals that USA had made several miscellaneous payments in varying amounts to Schwank even after the breach of contract action had been filed. For instance, after Schwank filed suit in June 2002, USA made payments in the amounts of $7,300 on July 12, 2002, $2,555 on August 21, 2002, and $6,770 on September 11, 2002. Thus, the two checks tendered during the settlement negotiation could have been viewed as additional payments on the total indebtedness. Further, in the September 2, 2003 letter, Horich expressly stated that "[t]he contract will not be considered executed until the enclosed original pages are initialed by yourself *and the September payment is received.*" (Emphasis supplied.) It is undisputed that USA did not make the September payment.

USA relies on *Paul Dean Corp. v. Kilgore*, 252 Ga. App. 587 (556 SE2d 228) (2001), for its argument that Schwank's acceptance of the checks was evidence that it had assented to the proposed settlement agreement; however, that case is distinguishable from the case at bar. *Paul Dean* involved the purchase of a laundry business, where the purchaser signed a promissory note and gave the seller a security interest in the laundry. Id. at 588. When the purchaser failed to make the payments required under the note, the seller threatened to foreclose on its security interest. Id. According to the purchaser, the parties then reached a settlement agreement whereby the purchaser would pay certain debts of the seller in exchange for the seller's forgiveness of the note. The terms of the settlement were never reduced to a signed writing, but the purchaser made numerous payments to the seller. Id. at 588-589. The first payment in the amount of $59,625.02 was accompanied by a letter stating that the tendered sum represented the outstanding principal and interest on a note owed by the seller to a third party, which was being paid by the purchaser under the terms of the settlement agreement. Id. at 588. A second check from the purchaser contained the following notation: "settlement/Paul Dean Corp." Id. at 589. The purchaser continued to make payments pursuant to the alleged settlement agreement until the seller began foreclosure proceedings, and the purchaser filed the underlying action against the seller. Id. Following a bench trial, the trial court concluded that an accord and satisfaction resulted from the seller's acceptance and negotiation of the payments, and we affirmed. Id. at 589-590 (1). We reasoned that the trial court's decision was not clearly erroneous in light of a letter by the seller's counsel memorializing the alleged agreement, as well as the notation on the second check. Id. at 590. In the present case, there was no such

evidence that a settlement agreement had been reached; in fact, the record demonstrates that the parties never assented to the terms of either of the proposed agreements. Further, neither of the two checks submitted by USA contained a notation or any indication that their acceptance was conditioned upon satisfaction of the debt. Finally, we note that the procedural posture of *Paul Dean*, in which the purchaser/debtor filed suit to enforce a settlement agreement, is completely different than the case at bar, in which Schwank, the seller, filed suit against USA, the purchaser/debtor, who first admitted liability and later asserted accord and satisfaction as a defense.

Because the record demonstrates that there was no meeting of the minds to create a valid settlement agreement between the parties, the trial court properly granted summary judgment on the issue of liability. The issue of damages remains for determination by a jury or bench trial.

2. Based on our holding in Division 1, we need not consider USA's remaining enumerated error.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 15, 2005.

*Fulcher, Hagler, Reed, Hanks & Harper, Scott W. Kelly*, for appellant.

*Hull, Towill, Norman, Barrett & Salley, Timothy E. Moses*, for appellee.